Fernandez vs. Soulie.

## No. 4357.

### J. A. FERNANDEZ vs. BERNARD SOULIE.

This suit is brought to recover from defendant $40,262 damages resulting from the alleged inexecution of a contract to give, within sixty days, a good title to a certain plantation sold, or promised to be sold, to plaintiff, and for property and improvements placed on said plantation. Defendant denies that he has failed to comply with his agreement. He alleges that a title was tendered to plaintiff in due time, but that objections were made to the title offered, and the plantation was abandoned by the plaintiff, who had been in possession for some time. Wherefore defendant set up a claim in reconvention for rent, for the value of certain agricultural implements, for mules, etc.

It appears that plaintiff was a lessee of the plantation before he became a purchaser thereof.

The evidence shows that the plaintiff had a right to object to the title offered him, and that he gave up the plantation, which was received by the defendant.

Practically, the only object in determining whether the instrument executed by defendant in favor of plaintiff be a sale or a promise to sell, is to ascertain whether the lease of the plantation held by plaintiff ceased to exist on the twenty-fourth of October, 1870, (the date of said instrument) or continued till the end of the year for which it had been made.

It is evident that the parties contemplated the execution of a formal act of sale, such as is usual in the transfer of a plantation. But the contemplated sale was not carried into execution. The effect of the cancellation of the agreement between the parties was to place matters as they were before the agreement. The plaintiff, therefore, continued to be a tenant under the lease, and he owed rents during that period. The evidence, even, shows that this was the understanding of the parties.

Notwithstanding the defendant had not furnished the plaintiff with such title as he had a right to require, said plaintiff remained in possession of the plantation. He had planted a crop and made valuable improvements on the plantation. The reciprocal claims of plaintiff and defendant, resulting from these relations of lessor and lessee, are settled, in the judgment of this court, according to the merits of each claim, as supported by the evidence.

Certain losses for which plaintiff claims damages are not attributable to the fault of defendant, but to a crevasse, for which the defendant is in no manner responsible, and to the act of the plaintiff himself.

APPEAL from the Seventh District Court, parish of Orleans. *Collens*, J. *Semmes & Mott* and *Sambola & Ducros*, for plaintiff and appellee. *William H. Hunt*, for defendant and appellant.

LUDELING, C. J. On the twenty-fourth of October, 1870, the defendant signed and delivered to the plaintiff the following instrument:

"I hereby agree to sell and promise to give a good and sufficient title within sixty days and do sell unto Mr. Joseph A. Fernandez the plantation known as Monsecours, situated at Poverty Point, in the parish of Plaquemines, with all its appurtenances, stocks, etc., for the price of thirty-four thousand dollars, of which one-fourth cash, balance one, two, and three years, with eight per cent interest."

This act was recorded in the parish of Plaquemines on the twenty-third of January, 1871.

This suit is brought to recover $40,262 damages, resulting from the alleged non-execution of this contract and for property and improve-

ments placed on the plantation. The defendant denies that he has failed. to comply with his agreement. He alleges that a title was tendered to the plaintiff in due time, but that on the twenty-fifth of March, 1875, objections were urged to the title offered, and the plantation was abandoned by the plaintiff, who had been in possession for some time. He alleges that the objections were frivolous. And defendant claimed in reconvention $8333 33 for rents, $800, the value of agricultural implements which belonged to the place, and $830 for mules and other movables taken from the place.

There was judgment in favor of the plaintiff for $19,818 13, with legal interest from the date of the judgment, and costs, and dissolving the agreement to sell.

From this judgment the defendant appealed, and the plaintiff has asked to have the judgment amended in his favor.

From the record the following facts appear: Monsecours plantation originally belonged to Alexander Lesseps and August Lesseps. In February, 1867, they leased the plantation to Leon Cusachs till January, 1870, with the right to renew the lease for one year more. The plaintiff is a witness to this contract. He was interested in the lease and took charge of the plantation. He subsequently became the sole lessee under said contract, assuming and paying the notes executed by Cusachs for three years; for the last year (1870) a verbal lease was agreed upon between plaintiff and defendant.

Alexander Lesseps died in October, 1867. Bernard Soulié was appointed his executor. In this capacity he controlled the Monsecours. plantation.

In May, 1859, Alexander Lesseps, as owner of two-thirds, and August Lesseps, as owner of one-third of said plantation and of an adjoining tract of land, had mortgaged both tracts to secure the payment of their joint and several notes, amounting to $105,000, in favor of one Shiff. Norbert Soulié, through his agent, Bernard Soulié, became the owner of several of these notes, amounting to $58,000. At the time of the death of Alexander Lesseps there remained outstanding of these notes $61,252 22, $46,028 15 whereof belonged to the succession of Norbert Soulié and $15,224 04 to Shiff.

On the twenty-fourth of April, 1868, upon the application of the executor of Alexander Lesseps, Bernard Soulié, the probate court granted an order to sell the property mortgaged as aforesaid. August Lesseps consented that his share of the property might be sold, and that the sheriff should make a title thereto to the adjudicatee. Monsecours was adjudicated to Norbert Soulié for $18,000, less than the appraisement. The executor of Alexander Lesseps filed his account and tableau and distributed the price between the concurrent creditors under the first,

mortgage, in accordance with the decree of this court. See Shiff vs. Succession of Lesseps, 22 An. 185. Other steps were taken to perfect the title then acquired, but it is not necessary to notice them further than to state that the sale made under the judgment obtained in the parish of Orleans was an absolute nullity, as the defendant resided in Plaquemines, and that the judgment homologating the sale on monition, by the probate court, only could cure defects or illegalities in regard to the public sale of the property of the succession; it did not affect the rights of the mortgage creditors of August Lesseps, who was alive. It did not affect the rights of those who asserted rights *dehors* the title of Alexander Lesseps. It is true, as contended by plaintiff, that the interest of August Lesseps in the land could not be sold under an order of the probate court in the succession of Alexander Lesseps, and that the consent of August Lesseps that it should be thus sold could have no greater effect than a private sale made by himself, as far as creditors having mortgages on his property were concerned. And though the first mortgage creditors, who took all the fruits of said sale, are estopped from attacking that sale, the subsequent judicial mortgage creditors of August Lesseps were not affected by those proceedings, and these mortgages, amounting to several thousand dollars, appear to rest upon the property. The plaintiff, therefore, had a right to object to the title offered him. The objection that the title offered was from the heirs of Norbert Soulié and not from B. Soulié himself is not well founded. We think the facts already stated show that the plaintiff knew the capacity in which B. Soulié controlled the property, and that his engagement was to procure a title to Monsecours for the plaintiff.

We have seen that late in March the plaintiff refused to accept the title offered and gave up the property, which was received by the defendant. Practically, therefore, the only object in determining whether the instrument aforesaid, executed by Bernard Soulié in favor of Mr. J. A. Fernandez, be a sale or a promise to sell, is to ascertain whether the lease of Monsecours ceased to exist on the twenty-fourth of October, 1870 (the date of said instrument) or continued till the end of the year for which it had been made.

It is evident that the parties contemplated the execution of a formal act of sale, such as is usual in the transfer of a plantation. We cannot presume the vendor intended to sell on a credit without taking notes for the price, or that he intended to abandon the privilege conferred by law, or the conventional mortgage usual in such transactions. And it is well settled that when parties agree to have their contract reduced to writing, the contract is not complete until the deed has been signed by both parties. 3 M. 348, 527; 5 M. 677; 1 N. S. 422; 24 An. 433.

"La rédaction d'un acte est une condition suspensive du contrat." 5 Boileux C. N., page 562.

In Macdonald vs. Aubert this court said: "We understand article 2437 to mean that a promise to sell, when the thing to be sold and the price of it are agreed upon, is so far a sale that it gives to either party a right to claim, *rectâ viâ*, the delivery of the thing or payment of the price, but such a promise does not place the thing at the risk of the promisee, nor does it transfer to him the ownership or dominion of it. If, by consent of both parties, a promise to sell is canceled, such an agreement could not be received as a retrocession of the property, and third persons, having a general mortgage recorded against the promisee, would have acquired no right or lien on the same, because it never belonged to their debtor." 17 La. 451.

The effect of the cancellation of the agreement between the parties was to place matters as they were before the agreement. The plaintiff, therefore, continued to be a tenant under the lease till the thirty-first of January, 1871, and he owed rents during that period.

The correspondence between the parties subsequent to the date of the agreement fully sustains this view of the case. On the fourteenth of December, 1870, Mr. Soulié wrote to the plaintiff, demanding the payment of the rents due up to the thirty-first of January, 1871, and informing him that he was then prepared to transfer the plantation on the terms agreed upon. On the thirtieth of December Mr. Fernandez wrote to Mr. Soulié, acknowledging the receipt of his account accompanying the above letter. He says: "J'ai reçu votre compte m'indiquant le montant que je vous dois au premier Janvier, 1871, soit $5493 87, pour balance de loyer de l'habitation de Monsecours, plus les intérêts jusqu'à cette dâte. Dans ce compte j'ai relevé une légère erreur a mon préjudice dans le calcul des intérêts sur deux mille piastres du vingt-huit Février, 1870, au premier Janvier, 1871 * * ce qui fait une différence de $26 66 dans les intérêts. Votre compte se trouve réduit a $5917 21, chiffre, qui je l'espère, sera trouvé correct par vous."

Notwithstanding the defendant had not furnished the plaintiff such a title as he had a right to require, the plaintiff remained in possession of the plantation. He planted a crop and made valuable improvements on the plantation. In consequence of a crevasse on an adjoining plantation Monsecours was inundated, and Mr. Fernandez abandoned the place. He claims to be reimbursed among others the following sums: Three thousand dollars to pay laborers from the first of January to the first of May; $4000 to pay overseer for the year 1871, employed by himself; $540 to pay his boiler for 1871; $360 for assistant engineer, and $6700 for seed cane, which he used in planting in 1871. These losses were not attributable to the fault of Mr. Soulié, but to a crevasse for which Mr. Soulié was in no manner responsible, and to the act of the plaintiff himself. The charge for $500 for repairs is also disallowed, as under the lease it had to be borne by the lessee.

Fernandez vs. Soulie.

But the value of the draining machine, $9500, of the draining canal, $2000, and of the lands cleared, $1000, must be paid by the defendant. They were ameliorations added to the property, which the owner has kept. No one should enrich himself at the expense of another. C. C. article 508; 16 La. 414; 3 Rob. 317; 6 Rob. 211; 12 R. 44 and 255; 2 An. 348; Beard vs. Morancy.

The evidence sustains the claim of the defendant for $5943 87, acknowledged by Fernandez in the letter already alluded to, and also the claim for $800, which is admitted to be just in the plaintiff's brief.

It is therefore ordered and adjudged that there be judgment in favor of the plaintiff against the defendant for the sum of $12,500, subject to a credit of $6743 87, with five per cent interest thereon from the fourteenth of June, 1871, and costs of the lower court. It is ordered that the costs of this appeal be paid by the plaintiff and appellee.