Meyer vs. Labau et als.

---

No. 12,989.

Henry Meyer vs. George J. Labau et als.

### Syllabus.

1. Defendants sold to plaintiff a store site in a country neighborhood, together with the good-will of the mercantile business they had been conducting, and obligated themselves not to engage in similar business there for a period of three years. Later, within the prohibited period, a store was opened across the road and distant from plaintiff's store one hundred feed, carrying same kind of stock plaintiff carried, with defendants behind the counters, making sales and attending to the affairs of the concern—one of them having the principal direction of the business. Held—a breach of the contract, notwithstanding the second store may have been conducted in the name of another.

2. The transfer of the good-will, and stipulation not to engage in competing

business. is considered to have meant not only the extending of the good-will to plaintiff, but maintaining him in it for the space of time agreed upon, and this good-will was withdrawn when defendants took part in con-ducting the rival store.

APPEAL from the Nineteenth Judicial District Court for the Parish of Iberia.  *Voorhies, J.*

*Andrew Thorpe* and *Thomas H. Thorpe* for the Plaintiff and Appellant.

*Foster & Broussard* and *L. O. Hacker,* for the Defendants and Appellees.

Argued and submitted January 11, 1899.
Opinion handed down May 1, 1899.
Rehearing refused June 26, 1899.

The opinion of the court was delivered by

BLANCHARD, J.  This action is one sounding in damages for breach of contract.

Plaintiff was a merchant in Bayou Sara, Louisiana.  He concluded to change his location, and did so, transferring his business to the Parish of Iberia.

Defendant, George Labau, with his two brothers of the half blood, Louis and Paul Cyr, owned a store site at what is called "Hubertville," near the town of Jeannerette.  The two Cyrs were minors, but emancipated.  Paul, the younger, was at school in Kentucky.  Louis Cyr was in Louisiana with his half brother, Labau.

The store site referred to embraced one acre of land.  Here, for years, a mercantile business had been conducted by Mrs. E. J. Cyr, the mother of Labau and Louis and Paul Cyr.  Labau, the issue of her first marriage, was much older than the Cyr brothers, issue of her last marriage.

When Labau became of age his mother transferred to him an interest in the business, and the firm became E. J. Cyr & Son.

Early in 1896 the mother died, leaving as her heirs the three sons aforesaid.

Labau then qualified as tutor of his minor brothers.

He continued the mercantile business in the old firm name for their account and his.

Some ten or twelve months after the death of the mother, the store house was destroyed by fire. A portion of the goods was saved. Those goods were placed in a frame building across the road, and the business continued.

Two or three months later, plaintiff entered into negotiations with George Labau for the purchase of the old stand and business of E. J. Cyr & Son.

This culminated on March 3, 1897, in a notarial act of sale by Labau and the Cyr brothers to plaintiff of the store site. The only improvements upon it at the time were a few out buildings of insignificant value—same having been appurtenances of the larger store building destroyed by fire.

Labau and Louis Cyr signed this act of sale before the notary. It was then sent to Kentucky, where Paul Cyr signed it.

The same day, a little later, the same notary drew up a paper, the substantive part of which reads as follows:

"Be it known that on this 3rd day of March, 1897,  *  *  *  personally came and appeared George Labau and Louis Cyr  *  *  *  who declared that in addition to the real estate this day sold, they do hereby transfer unto said vendee, Henry Meyer  *  *  *  the good will of their mercantile business this day transferred to him, and bind themselves not to engage in mercantile business in Hubertville within a period of three years from this date."

While this paper recites that Louis Cyr had appeared and made the declaration along with Labau, it seems that only Labau actually signed the document—signing in the presence of two witnesses and the notary.

Louis Cyr, who, it was understood, was to sign, did not appear to affix his signature, though he had been just previously in the notary's office. Nor did he subsequently sign it.

A few days later plaintiff purchased the remnant of goods belonging to Labau and the Cyr brothers, remaining over from that part of the stock saved from the fire, and opened business for his own account.

On the site he had purchased he erected a store building at a cost of $1,800, which, when completed, he moved into, and has since conducted there a general mercantile business—the same kind or character of business which Labau and the Cyrs had previously conducted.

Things went on as the parties contemplated they should until the fall of 1897, when a store building was erected on land belonging to

defendants and Paul Cyr just across the road, and distant less than one hundred feet from the store of plaintiff.

This building was put up by the direction and under the supervision of Labau.

In October, 1897, a mercantile business was opened in it under the firm name of E. J. Cyr & Son, with George Labau, Louis Cyr and Paul Cyr behind the counters, making sales and attending to the affairs of the concern. George Labau seems to have had the principal direction of the business. It was he who bought the stock, kept the books, drew and signed checks, took out the license, had letter and bill heads printed, and attended to the correspondence of the firm.

Deeming this an active violation of their contract of March 3, 1897, with him, plaintiff, in March, 1898, brought this action against Labau and Louis Cyr, alleging breach of contract and injury, and laying his damages at $16,100 itemized under several heads.

An exception of misjoinder filed by defendants was properly over-ruled. They then answered by general denial and prayed for trial by jury. The result of the trial was a verdict in favor of defendants. Plaintiff appeals.

To recover he must show, (1) contract; (2) the breach; (3) damage.

The conclusion we have arrived at is he has shown all three as against George Labau.

As to him the contracts executed on March 3, 1897, are to be viewed as one act.

Not so as to Louis Cyr, who, while there was an understanding he, too, was to join in the transfer of the goodwill of the mercantile business and in the obligation not to compete with plaintiff in such business for a period of three years, did not consummate the same by signing the paper drawn up to that effect.

Where parties enter a covenant one with the other, and it is the intention to reduce to writing the agreement, to be signed by all concerned, the covenant or agreement can not be said to be perfected or become exigible until so written up and signed. 3 M. 349; 1 N. S. 421; 24 La. Ann. 433; 4 L. 77; 30 La. Ann. 321; 28 La. Ann. 33.

In this instance the parties did contemplate that the understanding and agreement as to the goodwill, etc., should be reduced to writing and signed.

These features were, we think, of the essence of the contract, in large part forming the inducement to contract on part of plaintiff,

109

and the same entered into the consideration of the purchase by him as evidenced by the two acts before Hacker, notary public, on March 3, 1897.

But Louis Cyr did not consummate, by subscribing, that part of the transaction relating to the transfer of the goodwill and embodying the obligation not to compete with plaintiff. And while there is force in the contention that his brother should be considered as having authority to act for him, and inasmuch as he, Louis Cyr, shared in the proceeds of the sale of the store site, goodwill, etc., he should be held bound along with Labau, we do not feel authorized, though it is a close case, to so hold.

Eliminating, therefore, Louis Cyr from the case, what is the attitude of Labau, the other defendant?

Plaintiff testifies that when in the notary's office he discovered the act of sale drawn up did not mention the transfer of the mercantile business, goodwill, etc., he called attention to it. Whereupon Labau said the agreement as to the goodwill, etc., could be signed any time thereafter; that there was necessity for haste to draw up and execute the sale so far as the acre of land was concerned as it had to be sent off to his brother, Paul Cyr, in Kentucky, for his signature. That part, therefore, of the transaction which these parties had agreed on was then and there completed. After the signing of same, plaintiff says, all the parties left the notary's office, but returned after awhile when the notary drew up the second document relating to the transfer of the goodwill, etc. Louis Cyr, he says, was not then present, but Labau declared that whatever he (Labau) would do, would be all right with his brother, and thereupon he, with plaintiff, signed this second document.

This statement of plaintiff is not contradicted, though both defendants were witnesses in their own behalf. Neither had anything to say on the subject. The notary was not called to the stand, though present in court, as one of the attorneys for defendants.

What was sold in the way of a store site by Labau and the two Cyrs to plaintiff, in the act first executed on March 3rd, was one acre of ground "at a place commonly called Hubertville."

"Hubertville," it thus seems, was a neighborhood in the country, and the effort made by the defense to confine "Hubertville" to the single acre sold to plaintiff, in order to claim that in opening store across the public road from the acre, they were not violating the obli-

gation to abstain from doing business in Hubertville for a period of three years, fails. We hold "Hubertville," in the sense used by these parties in their contracts, to include the country immediately contiguous to and around the acre sold to plaintiff. Any other construction would defeat the object contemplated, viz:—relieving plaintiff from the effects of competition resulting from a near-by store opened by these same parties, who were selling to him.

What was transferred by Labau to plaintiff, in the second act passed before the notary on March 3rd, was the goodwill of the mercantile business he and the two Cyrs were then doing at Hubertville, and, along with it, he bound himself "not to engage in mercantile business in Hubertville" for a period of three years from that date.

While the first act passed that day did not specifically include the conveyance of their mercantile business, but only the acre of ground, interpreting it by the second act executed the same day it is clear that Labau intended to convey, by the terms used in the first act, the mercantile business itself, as well as the site of such business, for, in the second act, he refers to "their mercantile business this day transferred to him," the phrase being "they (meaning himself and Louis Cyr) do hereby transfer unto the said vendee, Henry Meyer, * * * the goodwill of their mercantile business this day transferred to him, and bind ourselves not to engage in mercantile business in Hubertville within a period of three years from this date."

This "mercantile business" so transferred was the goodwill of the then existing establishment, which meant its patronage as far as he could control it, the encouragement of its patrons, and the advantage attaching to a business already established.

The "mercantile business," as thus used, did not mean the store site, for that was specifically conveyed by adequate physical description in the act; nor did it mean the remnant of goods remaining from those saved from the fire, for they were, by another and later contract (verbal) sold to plaintiff for the price of $425.

This second act, executed on March 3rd, specifically conveyed the goodwill.

We hold the two acts to be parts of one and the same transaction, so far as Labau is concerned, and that the consideration of $1,500, mentioned in the first act, covered not merely the sale of the store site, but "the mercantile business"—the goodwill of the existing establishment —as well.

And in these acts Labau bound himself not only to extend to plaintiff this goodwill, but to maintain him in it for the space of three years by the obligation not to engage, himself, in mercantile business at that locality for that period of time.

Has he fulfilled the stipulations he thus assumed? He has not.

By taking part in the opening and conducting of a rival business establishment immediately adjacent, giving his aid and encouragement to it, lending to it the advantage of his presence, his experience, his knowledge of the business, and his acquaintanceship with those, who, in that neighborhood, become patrons of such establishments, he has actively and flagrantly violated his obligation to plaintiff. He has, by this conduct, failed to maintain plaintiff in the goodwill conveyed to him, and has openly done that which is tantamount to withdrawing it from him. More than this, he must be held, within the scope of a liberal construction of the terms of the second act executed on March 3rd, to have engaged in mercantile business at Hubertville within the prohibited period.

He has done these things, even though it be true that he has no interest as owner in the new store erected and conducted there. It quite suffices that he, having conveyed to plaintiff the goodwill of his commercial business at that point, has now withdrawn it and extended same to the new store. The evidence, we think, abundantly establishes this, as it does also, in our view, that plaintiff would not have paid as much as $1,500 for an acre of land in the country on which to erect a store house, if he had not been induced to believe he was buying along with it the goodwill, patronage and advantage of the old business so long conducted there.

We are far from being convinced by the testimony that Labau has no interest as owner in the new store. Many facts and circumstances point to the reverse, and we think the weight of evidence establishes that, at least in the inception of the enterprise, he was a part owner and intended to be a member of the new firm, which started out to be called "Cyr Bros. & Labau." But we do not find it necessary to go into that inquiry.

Defendant Labau's liability is established without it.

As to the damages, plaintiff has suffered, it appears, we think, with sufficient certainty that the greater part of the $1,500, paid by plaintiff on March 3rd, when he purchased the store site and goodwill, was on account of the goodwill, which has now been withdrawn from him.

Again, plaintiff erected a store building upon the site purchased, at an outlay of $1,800. He did this on the faith of defendants' obligation to protect him from their competition. This protection they have taken away from him, and in so doing have neutralized the advantages he would have had from it.

And, again, with a rival establishment put up and conducted within a hundred feet of his store, it is not to be gainsaid that plaintiff does less business than he would do if it were not there.

It is idle for defendants to contend to the contrary. This rival store divides the patronage, and by this division plaintiff is a loser.

We will not go into a calculation to attempt to show how much he is injured by this competition. Some figures are given, in the evidence, and it may be that the losses can not be calculated to a mathematical certainty.

But, under the three heads of damage given above, we feel entirely justified in fastening upon defendant Labau a liability of fifteen hundred dollars under the guaranty of his contract and his breach thereof.

For the reasons assigned, it is ordered and adjudged that the verdict of the jury and judgment based thereon,. in so far as the defendant Louis Cyr is concerned, are affirmed; but in so far as the defendant George J. Labau is concerned the said verdict is set aside and the judgment predicated thereon annulled and reversed, and it is now decreed that plaintiff do have and recover of the said George J. Labau the sum of fifteen hundred dollars with legal interest thereon from judicial demand until paid, together with costs of both courts.

Mr. Justice Monroe takes no part, as he was not a member of this court when the case was submitted.