Allen J. Ellender, of Houma, and F. O. Chavez, of Shreveport, for appellant.

Wurzlow & Watkins, of Houma, for appellee.

O'NIELL, C. J. This is a suit for damages for slander. The case was tried by a jury, who rejected the demand. The plaintiff has appealed.

The parties to the suit, who are farmers and immediate neighbors, had a quarrel, in which, it is alleged, the defendant used slanderous language, in the presence of the plaintiff's two children and a colored farm hand. Wherefore, the plaintiff claims $3,000 damages. The claim is so exaggerated that we have concluded to transfer the case to the Court of Appeal, which has exclusive appellate jurisdiction of such cases when the amount in contest does not exceed $2,000. The Supreme Court has jurisdiction of such a suit when the plaintiff is serious in claiming more than $2,000.

It is ordered that this appeal be transferred to the Court of Appeal, First Circuit. The appellant is to pay the costs of the present appeal. All other court costs are to abide the final judgment.

---

(105 So. 43)

No. 26389.

## WITBECK v. REA et al.

(March 2, 1925. On Rehearing June 22, 1925.)

(Syllabus by Editorial Staff.)

1. **Mines and minerals ⬅58—No contract resulted from defendants' offer for sale of lease, where plaintiff declined to accept conditions imposed.**

Where plaintiff was in default on contract for purchase of a lease, and thereafter defend-

ants tendered, as a new agreement, original lease with certain conditions attached thereto, and plaintiff declined to accept conditions *held* that minds of parties did not meet, and no contract resulted.

2. **Mines and minerals ⬅58—Defendants' proposal to close contract for sale of lease could not ripen into enforceable contract until conditions were accepted and lease actually signed.**

Defendants' proposal to close contract for sale to plaintiff of a lease, if plaintiff would accept conditions imposed and waive option on other lands owned by defendants, could not ripen into an enforceable contract until conditions were accepted and lease actually signed, and until then defendants could withdraw all offers with reference to it, especially where plaintiff had paid nothing for such option.

3. **Injunction ⬅165—Bank had interest in seeking dissolution of injunction restraining it from returning lease to defendant.**

Where lease was deposited with bank for delivery to plaintiff on payment of draft attached, and plaintiff refused to accept lease, and enjoined bank from returning lease to defendant, bank had an interest in seeking dissolution of injunction, though it was a mere stakeholder.

On Rehearing.

4. **Injunction ⬅186(2)—Neither bank nor defendant entitled to attorney's fees for dissolution of injunction on merits.**

In suit to enjoin bank from returning to defendants lease which had been deposited with it for delivery to plaintiff on payment of draft attached, injunction *held* dissolved as to both defendants, not on any matter of form or irregularity, but on merits, and neither defendant was entitled to attorneys' fees.

Appeal from First Judicial District Court, Parish of Caddo: E. P. Mills, Judge.

Suit by A. T. Witbeck against Mrs. Rilla E. Rea and others. Judgment for defendants, and plaintiff appeals. Amended and affirmed on rehearing.

Foster, Looney, Wilkinson & Smith, of Shreveport, for appellant.

Blanchard, Goldstein & Walker, of Shreveport, for appellee First Nat. Bank.

Wilkinson, Lewis & Wilkinson, of Shreveport, for other appellees.

BRUNOT, J. Defendants are nonresidents of the state. They own certain lands in the parish of Ouachita.

On January 12, 1923, they executed a memorandum agreement for the sale to plaintiff of an oil, gas, and mineral lease upon certain described lands. There is a clause in this agreement reserving to plaintiff the preference or option to purchase a mineral lease upon certain other lands. (It is well to note here that the reservation of this option has an important bearing on the decision of this case.)

·The lease was prepared and signed by defendants on April 7, 1923, and it was forwarded to the First National Bank of Shreveport, with draft on A. T. Witbeck for $9,945.30 attached. The only instructions given the bank were to collect the draft, remit the amount in a certain way, and have an executed copy of the lease sent to Mr. W. O. Rea. The draft was not paid, and on May 24, 1923, the bank returned the documents to defendants.

In the interval between April 7, 1923, and May 24, 1923, there was considerable correspondence between plaintiff and Mr.'Garner W. Green, the attorney representing the defendants.

This correspondence convinces us that plaintiff defaulted on the contract, and by reason thereof defendants declared the contract at an end, and, upon their instructions, the bank returned the lease and draft to them.

Thereafter there was further correspondence between the parties which finally resulted in Mr. Green consenting to a new agreement. The pertinent part of his letter follows: .

"June 12, 1923.

"Mr. A. T. Witbeck, 1610 Creswell street, Shreveport, La.—Dear Sir: Your telegram of the 12th has been received and carefully noted, and as stated in ours of yesterday this property has not been disposed of. We will wait for ten days from this date, which will make it the 22d of June for the cash to be paid on a lease similar to the one heretofore sent you. Of course we understand that the time that the *other one was dated* would have to be brought up to date now because the time limits have been very seriously impaired, and we say to you that upon advice from the bank · that the money has been placed there, we will execute a new lease as of the present date, containing precisely the same covenants and conditions as were set forth in the one heretofore executed under the forfeited contract. After June 22d we will, of course, continue to deal with the other parties."

On June 15, 1923, defendants returned the original lease, with draft attached, to the First National Bank of Shreveport, with instructions to surrender the lease to plaintiff upon the payment of the draft and upon the signing by plaintiff of the following document:

"I, the undersigned, A. T. Witbeck, trustee, and also as individual, acknowledge that the lease made by Mrs. Rilla E. Rea authorized by Dr. R. W. Rea, Miss Rilla E. Rea, and Garner W. Green, although dated by them April 7, 1923, is not executed as a part and parcel of the transaction then had, but in virtue of a new negotiation had between said parties and said A. T. Witbeck, the leases in question being used for the simple reason that they were in possession undestroyed, and it is expressly understood that the said A. T. Witbeck is to have the length of time specified in said leases from the date at which the same is by him accepted, and that he is authorized to alter the lease by striking therefrom the word 'April' when he accepts the same and inserting 'June' and that said leases, together with this instrument, constitute the entire interrelations now existing between the parties."

The plaintiff refused to sign the foregoing instrument or to accept the lease with any conditions attached thereto, and on June 18, 1923, he wired defendants as follows:

"Purchaser requires assignment option on balance plantation as in my contract *period deal* will fall flat if bank is not instructed by Green to deliver lease without signing new agreement *period immediate action absolutely necessary*."

Upon receipt of the foregoing telegram defendants wired the First National Bank of

Shreveport to return the lease and draft, and plaintiff thereupon enjoined the bank from so doing, and cited the defendants through a curator ad hoc to answer the suit.

While the suit was instituted by way of injunction against the bank, its real purpose is to enforce the execution by defendants and the delivery to plaintiff of the original contract of lease of date April 7, 1923, and to preserve the option in favor of plaintiff, which defendants granted to him in the memorandum agreement dated January 12, 1923.

The bank filed an exception of no cause of action, an exception of nonjoinder of proper parties, and a motion to dissolve the injunction. The defendants, lessors, also filed an exception of no cause of action, and moved to dissolve the injunction, with an allowance of attorneys' fees.

On the trial of the motions to dissolve the injunction the merits of the case were heard in full, and the court, with all of the facts before it, overruled the exception of nonjoinder, sustained the exception of no cause of action, dissolved the injunction, and awarded the defendant bank $250 as attorneys' fees, and awarded the defendants, Mrs. Rea et al., $500 as attorneys' fees.

A motion for a new trial followed. This motion was finally disposed of adversely to plaintiff, and an appeal from the judgment rendered was ordered and perfected.

[1] The record convinces us that plaintiff was in default with respect to the original contract, and was chargeable with a breach of his obligations thereunder. Thereafter defendants tendered to plaintiff, as a new agreement, the original lease, with certain conditions attached thereto. This lease was to be delivered to plaintiff within a definitely fixed time, provided the price was paid and plaintiff accepted the conditions imposed. Plaintiff declined to accept the conditions; therefore there was no meeting of the minds of the parties, and no contract or agreement resulted from defendants' offer. Under these circumstances defendants were well within their legal rights in demanding the immediate return of the lease and draft. We presume it was upon this theory that the learned judge of the district court sustained the exception of no cause of action, dismissed the suit, and awarded both defendants attorneys' fees.

[2] After plaintiff filed this suit, defendants again offered to close the lease, if plaintiff would accept the conditions imposed and waive the option on other lands owned by defendants.

This proposal could not ripen into an enforceable contract until the conditions were accepted and the lease actually signed. Until then the defendants could withdraw all offers with reference to it. Such a proposal is inchoate, and either party may recede from it. Frederick v. Fasnacht, 30 La. Ann. 117; Villere v. Brognier, 3 Mart. (O. S.) 349; Id., 3 Mart. (O. S.) 527; Bloeker v. Tillman, 4 La. 80; Wolf v. Mitchell, 24 La. Ann. 434; Fernandez v. Soulie, 28 La. Ann. 31; Des Boulets v. Gravier, 1 Mart. (N. S.) 421; Meyer v. Labau, 51 La. Ann. 1729, 26 So. 463; Laroussini v. Werlein, 52 La. Ann. 427, 27 So. 89, 78 Am. St. Rep. 350.

It must be remembered that plaintiff paid nothing for the option he has insisted upon. Moreover, under the authorities just cited, defendants may withdraw their signature at any time before the lease is unconditionally accepted and signed.

[3] It is contended that the First National Bank was without interest; that plaintiff did not ask for a judgment against the bank, but merely enjoined the bank's proposed disposition of certain documents in its possession, and therefore it was not called upon to defend the suit or seek a dissolution of the injunction. It is true the bank was a mere stakeholder. There was no cause of action ex delicto alleged against it, and there were

no contractual relations between the plaintiff and the bank, but, as the bank was enjoined, it certainly had an interest in seeking the dissolution of the injunction which restrained it from complying with the instructions of its principal concerning the disposition of its principal's property.

We think the judgment is correct in every respect, and it is therefore affirmed, at appellant's cost.

## On Rehearing.

ST. PAUL, J. The rehearing herein granted was restricted to the question of attorneys' fees.

### I.

The case is stated fully in our original opinion; but the only matters pertinent to the present inquiry are the following, which we quote therefrom, to wit:

"While the suit was instituted by way of injunction against the bank, its real purpose is to enforce the execution by defendants and the delivery to plaintiff of the original contract of lease. * * *

"The bank filed an exception of no cause of action, an exception of nonjoinder of proper parties, and a motion to dissolve the injunction [on the same grounds]. The defendants, lessors, also filed an exception of no cause of action, and moved to dissolve the injunction. * * *

"On the trial of the motions to dissolve the injunction the merits of the case were heard in full, and the court, with all the facts before it, overruled the exception of nonjoinder, sustained the exception of no cause of action, dissolved the injunction, and awarded the defendant bank $250 as attorneys' fees, and awarded the defendants, Mrs. Rea et al., $500 as attorneys' fees."

### II.

In Fariss v. Swift, 156 La. 12, 99 So. 893, this court said:

"Whenever an attachment or other conservatory writ is dissolved after hearing the merits, or so that it is impossible to differentiate between the attorney's services for dissolving the attachment [or injunction, or other writ] and those for defending the suit, such attor-

ney's fees cannot then form an element of the damages to be allowed for the wrongful issuance of the writ, 'for to do so would be to allow the fees virtually for defending the suit on the merits, which is not permissible' "—citing Three Rivers Oil Co. v. Laurence, 153 La. 224, 95 So. 652. See, also, Kavanaugh v. Frost-Johnson Lumber Co., 149 La. 972, 90 So. 275.

### III.

[4] It is therefore clear that the defendants, Mrs. Rea et al., are not entitled to attorney's fees.

As to the defendant bank it is true that, in the court below, it took no active part in the trial; nevertheless it did file an exception of no cause of action, based (as we read its original brief filed herein) on the proposition that plaintiff had no right of action against it either ex delicto or ex contractu. And the fact remains that its said exception was sustained by the court below at the same time that it dismissed the suit, whilst its exception of nonjoinder was expressly overruled; that it did not answer the appeal or ask this court to sustain said exception of nonjoinder, but on the contrary expressly (in its said brief) asked this court to affirm the judgment of the lower court sustaining its exception of no cause of action.

It is therefore clear that the injunction was dissolved as to the bank, not on any matter of form or irregularity (say, nonjoinder), but only after "the merits of the case were heard in full, and the court had all the facts before it."

The fact of the matter is that the court below and (certainly) this court dissolved the injunction (the "real purpose of which was to enforce the execution by defendants, and the delivery to plaintiff, of the original contract of lease"), simply because, on the merits, plaintiff had no just claim to the lease which he thus sought to obtain. This, in our original opinion, we said:

"Under these circumstances defendants [Mrs. Rea et al.] were well within their legal rights in demanding the immediate return of the lease

and draft. We presume it was upon this theory that the learned judge of the district court sustained the exception of no cause of action, dismissed the suit, and awarded both defendants attorney's fees."

Hence the injunction was dissolved on the merits; and accordingly neither defendant is entitled to attorney's fees for dissolving same.

### Decree.

The judgment appealed from is therefore amended by striking therefrom all allowance for attorney's fees to either defendant; and as thus amended it is affirmed; the costs of this appeal to be borne by the defendants-appellees, and the costs of the court below to be borne by the plaintiff-appellant. The right is reserved to the defendants-appellees to apply for a rehearing.