THOMPSON, J.
 

 This is a suit for the possession of 774 sacks of rough rice, and on failure to obtain the rice, then for its value, amounting to $3,700.
 

 The plaintiff claims to have purchased the rice from the defendants, and that the said rice was to be delivered on board of vessel at Madisonville, St. Tammany parish, but that the defendants failed to comply with their contract.
 

 A sequestration was issued and the rice seized, but a few days thereafter it was released by defendants on bond.
 

 The defendants first filed a motion to set aside the sequestration on the ground that the plaintiff’s petition did not pray for a writ of sequestration to isshe, and hence that said writ illegally and improvidently issued.
 

 The motion was overruled, and defendants then answered separately, each denying that he had ever solfi the rice to the plaintiff, or agreed to sell plaintiff said rice.
 

 It was further alleged that the writ of sequestration issued without right or authority and without probable cause, and for that reason defendants have been damaged in the amount stated in the respective answers.
 

 On a trial, judgment was rendered rejecting the plaintiff’s demand and allowing defendants damages amounting in the aggregate to $415.
 

 The plaintiff did not pray specifically for the issuance of .a writ of sequestration, but the petition did allege a .state of facts which, if true, justified the issuance of the writ. The petition alleged that the writ of sequestration was necessary to protect petitioner’s rights in the premises.
 

 The .prayer was for judgment against the defendants, for general relief, “and that said writ of sequestration be maintained.” The plaintiff, through its attorney, swore to this petition, gave the bond in an amount fixed by the order of the court directing the writ to issue, and the writ accordingly issued. The allegations of the petition set forth the relief sought and the necessity of the writ, and the prayer was for relief and the maintenance of the writ. This was, in legal effect, a prayer for the writ. The lower judge so held, and we think his ruling was proper.
 

 On the merits, little is necessary to be said. . The plaintiff not only failed to establish a purchase of the rice, but the defendants proved, conclusively that no sale of the rice was made to the plaintiff by either of them.
 

 One L. P. ICuntz, acting for the plaintiff, testified that he went to the defendants’ residence to purchase the rice, and after discussing the price, he offered $4.40 per barrel for the Blue Bose and $4 for the Japan, which the defendants agreed to accept; that he told them he would have to telephone the plaintiff for authority to pay the prices named; that he did telephone the plaintiff, giving the prices he had offered; that the manager at first refused to pay $4 for the Japan rice, but finally agreed to that price; that he communicated this fact to the defendants in the form of writing, as follows:
 

 “I hereby purchase from A. Gitz & Sons 224 sacks Blue Bose rice at $4.40 per barrel of 162 f. o. b. schooner Caller Warehouse, 550 sacks Japan rice ^t $4.00 per barrel 162 f. o. b. schooner Caller Warehouse. Bice to be delivered as soon as possible. [Signed] Socola Bice Mill Company, L. P. Kuntz.”
 

 He testified further that he gave this writing to Emile Gitz to take to his father and to tell him that plaintiff accepted the rice; and that the father could sign the offer or not, as he pleased.
 

 This so-called agreement, which the witness designates as an offer to purchase the rice, was never signed, nor otherwise accepted by the defendants.
 

 
 *987
 
 Mr. Alfred Gitz testified:
 

 That he had written to the Empire Milling Company, to whom he had been selling his rice for some 15 years, telling them that his rice was ready for market, and, if they wanted to buy, to come out and make a bid on it. That the company sent a man out, who happened to be a brother of the representative of the plaintiff, but that they could not get together on the price, and that the agent left, intending to come back later. That in the meantime the plaintiff’s representative came out and got a sample of rice and took it to New Orleans.
 

 That in a few days he returned and offered $4.25 for the Blue Rose and $3.55 for the Japan. That he told the agent that he had a better offer from the other mill. That the agent then asked him what he wanted for the rice, and he told him that he would take nothing less than $4 for the Japan and $4.40 for the Blue Rose, but that he was waiting on the Empire people, whose representative he was expecting, and that he could not close a deal with him until he had heard from the other people. ’
 

 “Q. You told Louis Kuntz that you had taken the matter up the day previous with his brother, Eddie Kuntz, who was sent there by the Empire Milling Company, and you couldn't close the deal until you heard from the Empire Company through Eddie Kuntz. Is that correct ?
 

 “A. Yes, sir.”
 

 The other three defendants testified to practically the same thing as their father did.
 

 , It is very clear from this testimony that there was no sale.
 

 , At the most, the negotiations went no further on the part of the defendants than the naming of a price to be submitted to the plaintiff for its acceptance, but with the distinct understanding that no sale could be made to the plaintiff until the defendants had heard from the Empire people.
 

 The defendants did hear from the other people, and made a sale to them. The plaintiff’s demand was therefore properly rejected.
 

 We are of the opinion, however, that the court below committed an error in condemning the plaintiff for damages.
 

 The only motion made to dissolve the sequestration in advance of the trial on the merits was the one based on the alleged failure of plaintiff to specially pray for the writ of sequestration.
 

 This motion was overruled. The real attack on the right of plaintiff to the sequestration was made in the answer, and, of course, was involved in the trial on the merits. The whole defense on the merits was directed to the question of the sale of the rice.
 

 If the plaintiff had succeeded in proving a purchase of the rice, the writ would have been maintained. The writ was dissolved in consequence of the failure of plaintiff’s case on the merits.
 

 The rule is well settled that, in such circumstances, no damages are allowable for the wrongful issuance of the writ.
 

 In Fariss v. Swift, 156 La. 12, 99 So. 893. this court said:
 

 “Wherever an attachment or other conservatory writ is dissolved after hearing the merits, or so that it is impossible to differentiate between the attorney’s services for dissolving the attachment and those for defending the suit, such attorney’s fees cannot then form an element of the damages to be allowed for the wrongful issuance of the writ, ‘for to do so would be
 
 to allow the
 
 fees virtually for defending the suit on the merits, which is not permissible.’ ”
 

 See, also, Whitbeck v. Rea, 158 La. 1003, 105 So. 43; Fabacher v. Rouprich, 160 La. 433, 107 So. 295; Smith v. Keith Motors Co., 163 La. 396, 111 So. 798.
 

 The damages, other than attorney’s fees claimed by defendants, were for loss of time in going to Covington to employ counsel to
 
 defend the
 
 suit, and fall under the ruling in the cases cited.
 

 
 *989
 
 The so-called actual damages, according to defendants’ allegations, appertain to the defense of the suit on the merits, and have no connection with a dissolution of the sequestration otherwise than as a result of the trial on the merits.
 

 The judgment rejecting the plaintiff’s demand is affirmed, but otherwise the said judgment is annulled and reversed, and the reeonventional demand of defendants is rejected. The costs of this court are to be paid by the defendants, and those of the lower court by the plaintiff.