### DEMPSTER v. WARNER.
### No. 2086.

Court of Appeal of Louisiana. First Circuit. March 4, 1940.

Rehearing Denied April 10, 1940.
Writ of Error Refused May 27, 1940.

**128**

Pujo, Hardin & Porter, of Lake Charles, for appellant.

Hawkins & Tritico, of Lake Charles, for appellee.

DORE, Judge.

Plaintiff instituted this suit against defendant for the purpose of establishing her ownership of a houseboat and furniture thereon in the possession of defendant. In her original petition she prayed for and obtained a writ of sequestration by virtue of which the boat was sequestered, and in a supplemental petition she prayed for and obtained another writ by virtue of which the furniture was sequestered.

Defendant, in answer to the original petition, denied the ownership of the boat to be in plaintiff, but asserted his occupancy and ownership thereof; and, in answer to the supplemental petition, averred that he, and not the plaintiff, was the owner of the furniture. In a supplemental answer to the original and supplemental petitions, defendant, assuming the position of plaintiff in reconvention, claimed damages in the total amount of $8,100, as attorney's fees and other items for the wrongful seizure of the boat and furniture and for medical expenses caused by injuries sustained by his wife while on the houseboat, and the loss of the society of his wife due to her injuries.

The trial of the case resulted in a judgment in favor of defendant, decreeing him to be the owner of the boat and furniture thereon, and granting defendant judgment against plaintiff in the sum of $400. Plaintiff has appealed, and defendant has answered the appeal asking for an increase in the damages allowed.

There are two questions to consider: (1) Who owns the houseboat and furniture? Is the defendant entitled to any damages, and, if so, how much?

A fair statement of the facts as reflected by the record is as follows:

Plaintiff and defendant were married in 1924, at which time the defendant owned the boat and furniture in contest. They were divorced during the year 1934. In 1929, the boat and furniture were stored with the Lake Charles Boat Club by the defendant. Some time prior to July 7, 1935, it is apparent that friendly relations were established between plaintiff and defendant. It appears from the correspondence had between defendant and plaintiff that defendant, on account of his financial condition, had abandoned or foregone any interest in the boat and furniture unto the Lake Charles Boat Club for the rentals and taxes owed to it; and that he sought a mutual friend, Ceriac Rhodes, to make an offer of $250 on behalf of plaintiff for the boat and furniture, which was accepted by the boat club. It further appears by the letters written by defendant that he was acting as the agent of plaintiff to buy the boat from the boat

club for plaintiff; and in pursuance thereto, defendant, on July 7, 1935, sent to plaintiff a telegram requesting plaintiff to send him a check to apply as partial payment on the boat (furniture included) as required by the boat club, the balance to be paid on delivery of the boat (with furniture) on July 15; that he would send a full statement properly receipted by the club and have a bill of sale made to plaintiff and/or her daughter as she might desire; he to handle the transaction in any way she might suggest. It appears that plaintiff sent the money as requested by this telegram, and upon the payment by plaintiff on July 15 of the balance due, the boat was released in the possession of defendant for plaintiff.

On July 19, some four days after the release of the boat by the boat club, defendant, amongst other things, wrote plaintiff that he "bought it (referring to the boat and furniture) over from the club". In that letter he also discusses the condition of the boat and the furniture and the repairs needed, and states: "Hope you have all my letters by now about the boat and I started to wire you this A. M. to ask just how you felt·about it, as I didn't want to go on if you felt you couldn't (referring to the repairs necessary to put the boat in condition). I know though that Babe (plaintiff's daughter) will help out and *if my being on it would interfere* (he having requested permission to occupy the boat as being less expensive to him than living at a local hotel) *then can be arranged as you wish. It will be your boat absolutely and to do with as please. You will need some one to take care of it though and you can give me the job."* (Italics and parantheses supplied).

It appears from the evidence, including the correspondence, telegrams, checks and oral testimony, that plaintiff furnished all necessary funds to buy, or redeem the boat, together with the furniture, from the boat club and paid all back taxes due thereon; that plaintiff paid for all repairs necessary to recondition the boat, and paid all the taxes as they accrued to the time of sequestration.

In one of defendant's letters to plaintiff, he states that she will be given a bill of sale for the boat; he reaffirms this statement in his telegram to her of date July 7. On March 23, 1936, defendant admits the execution of the following document in affidavit form: "That he is the owner of the Houseboat 'Dempster', that for and in consideration of the sum of Ten ($10.00) Dollars, and other valuable considerations, he wishes to sell, convey and otherwise transfer unto Mrs. G. T. Dempster (plaintiff herein), *all his rights and interest in and to the above designated boat."*

This document which is said to constitute the bill of sale between the parties may not have been drawn clearly and concisely as to form, but it does indicate, beyond doubt, defendant's intention to confirm the sale of the boat and furniture to plaintiff when considered in connection with his letters and telegrams.

It is true that there is testimony on both sides from disinterested witnesses with regard to whom they considered the boat and furniture to belong from statements made by each of the litigants. While this testimony is about equally divided, it corroborates to some extent the written admissions of the defendant to the effect that the plaintiff was the rightful owner of the property in dispute.

The most that can be said in favor of defendant's claim of ownership, is that, at the time of the sequestration, the boat and furniture were in his possession and were assessed to him. As to the boat being in his possession in the early part of 1938, the evidence seems to show that he was occupying this boat and furniture by sufferance of plaintiff. In February, 1938, defendant informed plaintiff that he was about to remarry, and this seems to have caused a parting of the ways between the two. From then on until the sequestration defendant was a mere trespasser on the boat. As to having the property assessed to him, this is explained by his own testimony; it was done for the convenience of plaintiff. Defendant admits that plaintiff paid all the taxes due on the boat through him. The matters of possession and of assessment are questions which might be raised if the rights of third persons had intervened, but as between the parties to the transaction, they cannot be considered strong enough to overcome the other evidence relating to the sale.

The defendant, feeling the force of his written statements relative to the boat and furniture, testified that in February, 1938, some three months prior to the sequestration, he offered to return and reimburse to plaintiff the amounts which she had expended. Plaintiff denied receiving any such offer, and the defendant failed to show that he was financially able to reimburse plaintiff at the time of his alleged offer, and fail-

ed to introduce any other corroboration of his testimony that the offer was made.

■ From the above considerations, we have come to the conclusion that plaintiff is the owner of the property and that the judgment is erroneous and should be reversed.

■ Defendant filed a reconventional demand for such damages as he may have sustained by virtue of the issuance of the writs of sequestration, and for medical expenses incurred by him arising out of injuries sustained by his wife by her falling through the apron of the boat. Having come to the conclusion that defendant was not the owner of the boat, we must necessarily conclude that he is not entitled to recover any damages which he claims were caused him by the issuance of the writs of sequestration. We are called upon to consider only his claim for expenses arising out of the injury to his wife. It is noted that he does not claim these damages in the alternative should it be decided that he was not the owner of the boat; he seeks damages against plaintiff for injuries received by his wife, caused by a defect in his own boat, which creates a paradoxical situation. He stands in the position as plaintiff in an original action; and since he alleges that he is the owner of the boat, it is certain that he could not recover any damages against a third party should his wife be injured thereon. From his pleadings, therefore, he cannot recover from the plaintiff for such alleged injuries.

For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be reversed, annulled and set aside, and that there be judgment herein in favor of the plaintiff and against the defendant, decreeing plaintiff to be the owner of the houseboat "Dempster" and the furniture thereto appertaining, and ordering the sheriff of the Parish of Calcasieu to deliver possession thereof to plaintiff, sustaining and perpetuating the writs of sequestration herein issued, all at the costs of defendant; it is further ordered that the reconventional demand of defendant be and the same is hereby dismissed at his costs.

OTT, Judge (dissenting).

In my opinion, the plaintiff has failed to prove that she is the owner of the houseboat and furnishings sequestered in this case. It is not denied that the defendant owned the property when he and the plaintiff were divorced in 1934. For Mrs. Demp-ster to prove her ownership, she must prove some transfer of ownership of this property from the defendant to her since that date.

The fact that Mrs. Dempster advanced the money to pay the storage due the Lake Charles Boat Club, of course, would not make her the owner of the boat. The boat continued in the possession of the defendant and he exercised all of the usual acts of ownership thereof. The boat was assessed in his name, and so far as the record shows, Mrs. Dempster never at any time exercised acts of ownership or attempted to direct the use of the boat.

In my opinion, the plaintiff advanced the money to get the boat out of storage through her desire to retain the friendship and good will of her former husband. The record is replete with evidence that she did not want to sever all social relations with him, and she felt free to use her ample means to assist him at a time that he was apparently at a rather low financial ebb.

Mrs. Dempster, in my opinion, was perfectly willing to pay this storage and the other expenses incident to the ownership and operation of the boat in return for the pleasure that she and her daughter received from their frequent trips to Lake Charles in order to enjoy outings and parties on the boat with the defendant. The letters that passed between them indicate that they were on most friendly terms, and the boat was used by them apparently without any thought that the boat was the property of Mrs. Dempster and the defendant was merely her agent or custodian of the boat.

The letters which defendant wrote to his former wife asking for the money to redeem the boat from the boat club do not, in my opinion, indicate any serious intention on his part to divest himself of the ownership of the boat. These letters rather indicate friendly jesting. For instance, he says in his letter of July 7, 1935, to his former wife that the boat will be hers and that she can do with it as she pleases. He then goes on to state that she would need some one to take care of it, and suggested that she might give him the job, and concludes, "you know I can pass as your chauffer."

And the so-called bill of sale which he executed in March, 1936, obviously was not a serious sale. The defendant himself states that it was merely a kind of security in case anything should happen. These letters and this bill of sale, interpreted in the light of the circumstances then existing and the relation of the parties, only show a desire

on the part of defendant to express his appreciation for the liberal advances of money that the plaintiff was making to him from time to time.

When the parting of the ways came at the time the plaintiff was informed that the defendant was to marry another woman, the former did not immediately claim that she owned the boat and ask that it be delivered to her. If the defendant is to be believed (and the trial judge must have believed him) he offered to refund the money that plaintiff had advanced on the boat, but she told him that she would not have any more use for the boat; that she was going to leave and never come back. She took her personal belongings off the boat and removed the name "Dempster" from it, this name having been on the boat for many years. Her acts indicated that she did not then claim to own the boat. Her later effort to get possession of the boat through a claim of ownership was apparently an afterthought to harrass and annoy the defendant and his new wife.

I do not find sufficient evidence in the record to justify a reversal of the finding of the trial judge on the question of the ownership of the boat and its furnishings.

I respectfully dissent.