**ROCKET INDUSTRIES, INC.,**
**Plaintiff-Appellee,**

v.

**SOUTHERN TIRE & SUPPLY, INC. and**
**Anthony Piazza, Defendants-Appellants.**

No. 82–3563
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 6, 1983.
Rehearing and Rehearing En Banc
Denied Aug. 16, 1983.

Michael Osborne, J. Paul Demarest, New Orleans, La., for defendants-appellants.

David M. Culpepper, New Orleans, La., for plaintiff-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A manufacturer and supplier of custom-designed automobile wheels seized merchandise and accessories in the possession of one of its distributors under a writ of sequestration. The distributor contends that it did not purchase the wheels and, therefore, does not owe the manufacturer for them. *Ipso facto,* it asserts, the writ of sequestration was improperly obtained on the basis of the manufacturer's representations that it had a vendor's privilege on, or security interest in, the property.[1] The distributor, therefore, appeals the district court's denial of damages for the alleged wrongful seizure of the wheels. We conclude that the district court's finding that the manufacturer had title to the wheels is supported by the record, and that the court correctly applied Louisiana law in concluding that the manufacturer, as their owner, had the right to seize them. We, therefore, affirm.

The district court made its findings by careful selection from what it termed "a cauldron of contradictory testimony." We summarize. Rocket Industries, Inc. (Rocket) manufactures and sells automotive parts. A majority of its business involves custom wheels, which it sells through distributors. As part of a nationwide distribution program, Rocket negotiated a warehouse arrangement with Southern Tire and Supply Company (Southern), a retail and wholesale automobile tire and wheel business in New Orleans, Louisiana.

Rocket shipped a quantity of wheels to the Southern warehouse. The price of the wheels was not fully paid, and Rocket sued for the balance it claimed was due, seizing all wheels that remained in Southern's possession under a writ of sequestration. Rocket contended that the warehouse transaction was a sale under which title passed to Southern and that Southern owed Rocket the price of all merchandise delivered. Southern had a completely different version

1. In Louisiana, a party to legal proceedings who claims an ownership, mortgage, or lien interest in, or a privilege on, property may petition for a writ of sequestration if the property can be concealed, disposed of, or wasted, during the pendency of the proceedings.

> A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear *from specific facts* shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.

> The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully.

La.Code Civ.Proc. art. 3501 (West 1961) (emphasis supplied).

> When one claims the ownership or right to possession of property, or a mortgage, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.

La.Code Civ.Proc. art. 3571 (West 1961).

of the terms of their arrangement. It maintained that it had simply agreed to store the wheels for Rocket, sell them for Rocket's account, and then remit Rocket's share of the proceeds.

Although Southern contends that the district judge did not characterize the arrangement as either sale or consignment, we read his opinion as finding it to be a consignment. His opinion first reviews the Louisiana cases that establish the criteria for distinguishing the two.[2] Deciding that Rocket has not demonstrated that there was "an outright sale," he finds that instead an arrangement "most advantageous" to Southern was made. Because he was choosing only between a sale, which would have resulted in title passing to Southern and its becoming indebted for the full purchase price, and a consignment, which would have caused title to remain in Rocket, with Southern being obliged to pay only for the wheels it sold, the conclusion is implicit: this was a consignment, or, however characterized, a transaction in which Rocket retained title. It was on this basis that the district judge concluded that Southern was indebted to Rocket only for merchandise neither repossessed by sequestration nor already paid for.

In its complaint, however, Rocket alleged two grounds for a writ of sequestration that were inconsistent with its ownership of the property: that it had a security interest under California law and a vendor's "lien" under Louisiana law in the property. The evidence proved the seizure could not be supported on these grounds because ownership of the property had not passed to Southern, but seizure was proper under the facts adduced at trial. As owner of the property, Rocket was entitled to request a writ of sequestration. La.Code Civ.Proc. Ann. art. 3571 (West 1961). There being a proper basis for the seizure, it cannot be decreed wrongful.[3] *See Socola Rice Mill Co. v. Gitz,* 165 La. 984, 116 So. 407 (1928) (the plaintiff did not pray specifically for the issuance of the writ, but it was issued under a prayer for general relief and the plaintiff proved its right to the writ on the merits).

In *Terzia v. Grand Leader,* 176 La. 151, 145 So. 363 (1932), the Louisiana Supreme Court said, "If the facts alleged and sworn to, do not, as a matter of law, warrant the issuance of such a writ, then the writ must fall and no subsequent allegations setting out a different cause of action can save it." However, this passage refers to the insufficiency of the allegations in the initial petition to support issuance of the writ. Seizure based on a legally insufficient petition does not satisfy the requirements of Louisiana Code of Civil Procedure article 3501. *Terzia* does not imply that a writ issues illegally if the evidence at trial supports a ground for issuance different from that alleged in the petition. The writ issues legally if the petitioner alleges adequate and valid grounds to support it, even if these are later disproved. And the writ will not be dissolved if proper grounds for its maintenance are established at trial.

In the Louisiana cases holding that the writ of sequestration issued wrongfully, the plaintiffs failed to allege a necessary ground for issuance of the writ when they applied for it. *E.g., Hancock Bank v. Alexander,* 256 La. 643, 237 So.2d 669 (1970) (writ should not have issued because plaintiff did not claim ownership or lien interest in sequestered property); *Matherne v. Matherne's Estate,* 341 So.2d 1254 (La.App. 1976), *writ denied,* 343 So.2d 1072 (1977) (writ issued improperly because plaintiff did not present claim to succession representative before suing to sequester succession property).

---

**2.** *A.J. Nelson Manufacturing Co. v. J.H. Menge & Sons, Ltd.,* 142 La. 664, 77 So. 494 (1918), together with our review of that case in *Central Oil and Supply Corp. v. United States,* 557 F.2d 511 (5th Cir.1977); *Harry Winston, Inc. v. Levin,* 130 So.2d 717 (La.App.1961).

**3.** Southern did not appeal the magistrate's denial of its motion to dissolve the writ of sequestration. Rocket now contends that Southern is barred from challenging the issuance of the writ. In view of our conclusion that the writ was not wrongfully obtained, we need not consider this argument.

Because the writ in this case was not wrongfully obtained, and the district court found that Southern was not entitled to possession of the wheels, Southern is not entitled to recover damages. *Dempster v. Warner,* 194 So. 127, 130 (La.App.1940). *Compare Barry v. Union Sulphur Co.,* 167 La. 227, 229, 119 So. 30, 30–31 (1928) ("It is only for the illegal issuance or wrongful obtaining of a writ of sequestration that damages may be recovered.... Of course, if it appeared on the trial of the merits, which it apparently did, that defendant was the owner of the oil, and hence that the writ wrongfully issued, then such damages as defendant may have suffered, other than those for attorney's fees, may be recovered....").

The district court computed the sum due Rocket by deducting the value of the merchandise seized from the total value of merchandise shipped to Southern. Southern contends that the district court erred in determining the value of the seized property by relying on testimony offered by Rocket, which in turn was based on an incomplete tally of the merchandise seized. Southern argues that Rocket's tally counted 159 fewer wheels than were shown on the U.S. Marshal's return. The district judge found that Rocket's valuation was "the only credible evidence [presented] regarding the invoice value of the seized merchandise....," and we cannot label his acceptance of Rocket's valuation as clearly in error. Fed.R.Civ.P. 52(a).[4] The argument, now made, that the tally on which Rocket based its valuation is patently incomplete because it lists only 3180 wheels and the Marshal's return shows seizure of 3339 wheels, was not presented to the trial court, and we do not now consider it. *See* 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil §§ 2472 & n. 16, 2581 & n. 60 (1971) (Fed.R.Civ.P. 46 & 52(a) require party to make known to district court objections to its findings and judgment in order to preserve point for review).

For these reasons, the judgment is AFFIRMED.

---

4. The average value of the wheels being variously described in the record as $20 and $35, and Southern having admitted at trial that it did not keep the wheels sufficiently separated to know which were which, the maximum value that could have been ascribed to 159 wheels, at the average price of $35 each, would be $5600. This represents only 5% of the valuation of $110,593.50, which the district court accepted.