No. 3034

First Circuit

---

LOUISIANA STATE RICE MILLING CO., INC., v. BAKER

---

(Feb. 12, 1927. Opinion and Decree.
(March 8, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest — Obligations — Par. 146, 147.**

One who is under a contract to furnish water to raise a rice crop, but floods the land only once, although several floodings were necessary, will not be entitled to payment under the agreement, where this breach of contract is due to no fault of the other party.

2. **Louisiana Digest — Obligations — Par. 147; Act of God—Par. 2.**

One who is under contract to furnish water from a bayou which becomes salty due to dry weather, will not be liable in damages to the contractee for the loss of his rice crop, because under Articles 1933 and 2219 of the Civil Code this condition is a fortuitous event.

3. **Louisiana Digest—Sequestration—Par. 31.**

Attorney's fees are not allowed as damages for the dissolution of a sequestration where it was due solely as a result of the determination that rice belonged to the defendants.

Appeal from the District Court, Parish of Jefferson Davis. Hon. Jerry Cline, Judge.

Action by Louisiana State Rice Milling Co., Inc., against Albert Baker, et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Modisette & Adams, of Jennings, attorneys for plaintiff, appellant.

John B. Fournet, of Jennings, attorney for defendant, appellee.

ELLIOTT, J. Action involving the ownership of one hundred and fifty-five bags of rice, claimed as water rent.

Louisiana State Rice Milling Co. claims the ownership of one hundred and fifty-five bags of rice out of the rice crop made by Albert Baker, Joseph Baker and Phillip Baker, stored by them in the Miller Warehouse at Jennings. Defendants also claim the ownership of the rice and deny plaintiff's right thereto. The plaintiff caused the rice to be sequestered, but pending the suit the rice was sold by agreement, the proceeds taking its place in the suit.

The defendants filed some motions and exceptions which were overruled. They then answered, denying that the plaintiff was the owner of the rice, alleged that same belonged to Albert Baker, and that the other defendants were his employees. They admit that an agreement had been entered into between Albert Baker and the plaintiff, whereby the plaintiff was to have one-fifth of the crop as rent for furnishing water necessary to make the crop, but they allege that plaintiff did not carry out its understanding to furnish water, with the result that the crop was greatly injured. That less was made than would have been if plaintiff had furnished water at the right time and as demanded and in sufficient quantity and of the right kind necessary for the purpose of irrigating the rice. That due to plaintiff's failure, part of their crop planted was a total loss. They further allege that plaintiff abandoned their crop, leaving it as a total loss for lack of water; upon which Albert Baker, the owner of the crop, was forced to enter into a contract with C. J. Guidry, whereby Mr. Guidry saved their crop, to the extent that it was saved, by pumping water on it from his well at an expense of several hundred dollars. That defendants in that way succeeded in making a short crop on part of their land; but about fifty acres could not be watered from the Guidry well and was a total loss. They allege a large amount of damages which they claim in reconvention and in addition $250.00 attorney's fees on account of the sequestration made at the instance of the plaintiff.

The important facts are not disputed. The plaintiff entered into an oral agreement with Albert Baker to furnish him water to irrigate and make a rice crop. The terms and conditions of the contract were the same as had been agreed the pre-vious year in a written contract. This written contract was not offered in evidence and is not in the record. The conditions of the agreement are so darkly outlined by the evidence on the subject that we could not with safety decide a contest, dependent on them; but we find no dispute on any matter of that kind. The only important question about which the plaintiff and defendants differ is whether or not the contract between them was abrogated and terminated by the fact that before the rice crop could be produced, the water in Bayou Nezpique, from which plaintiff's canal was supplied with water (the contract between the parties contemplated that fact) became so salty, due to the dry weather, that further use of it on the growing rice crop would have killed the rice and destroyed the crop.

The defendants urge that the crop was injured by plaintiff's delay in starting its pumps and by break downs occurring after starting due to defective equipment. That delays of this kind deprived the crop of water when water was needed and served to shorten the amount produced. The evidence, however, does not show with reasonable certainty that defendants' crop suffered any definite and ascertainable shortage on account of matters of that kind. The only definite and sufficiently established shortage and loss was due to the fact that after plaintiff had wet defendant's field and the rice had come up and was growing and after plaintiff had flooded the rice crop one time and had started to flood it again, the water in Bayou Nezpique became so salty that if it had been admitted on the field it would have killed the rice and destroyed the crop. The crop needed water at the time and remained without water, suffering serious harm.

Seeing that their crop was about to be lost the defendants called on the plaintiff

to save it by pumping water on it from neighboring wells. An arrangement of this kind could have been made by plaintiff and one of its employees started to pump water on it from a well; but its officers would not permit it to be done and left the crop to be lost.

Defendants seeing their crop given up and suffering and about to be lost for want of water, entered into an arrangement with C. J. Guidry, whereby Mr. Guidry pumped water on it from his well and continued to water it in this way until it was made, that is made to the extent that it was saved. There was a shortage over the entire field. About fifty acres was higher than the balance of the field. The entire crop could have been irrigated from plaintiff's canal; but the fifty acres could not be irrigated from the Guidry well and was therefore entirely lost.

The evidence indicates that plaintiff could have arranged with the owners of nearby wells for enough water to irrigate defendants' crop, at least as much as was watered from the Guidry well; but plaintiff choosed to let the crop perish rather than do it. Plaintiff was unwilling to pump from · wells on the ground that it was too expensive and that it was not obligated to furnish water except from Bayou Nezpique.

It is argued by plaintiff that on account of the work performed toward making the crop that it is equitably entitled to the one hundred and fifty-five bags, which is one-fifth of the rice made. That as for the sum expended by the defendants for the water pumped by Mr. Guidry on the crop from his well, that the sum should be paid one-fifth by the plaintiff and four-fifths by the defendants; but we do not think so. The evidence is clear

that the one flooding was not sufficient to make a rice crop. According to the evidence, nothing would have been made if defendants had not succeeded, at an expense of several hundred dollars, in getting successive floodings from Mr. Guidry's well. The plaintiff was requested to make an effort to get water for the crop in that way but declined to make any effort in that direction. The plaintiff abandoned the crop and gave it up as a total loss. Defendants then saved it to the extent that it was saved in the way stated. The rice, which is the subject of this suit, must be awarded to the defendants and it is ordered that the party having custody of the proceeds pay same to the defendants.

But defendants' crop shortages and losses are not due to the fault of the plaintiff under the contract. Plaintiff was not obligated to furnish water from wells, it was to come from Bayou Nezpique. The water of the bayou became salty; not through any fault of the plaintiff, but due to the dry weather. This salty condition was therefore a fortuitous event within the meaning of the law, Civil Code, Arts. 1933 and 2219. The plaintiff can not be charged with liability on account of a fortuitous event. Defendant claims $250.00 damages as expended on account of attorney's fees due to the sequestration of the rice involved in the suit. The dissolution of the sequestration comes about solely as the result of the determination that the rice belongs to defendants. The American Hoist and Derrick Co. vs. Frey, 127 La. 183, 53 South. 486, case, cited by defendants do not support their claim for attorney's fees.

The judgment appealed from is correct.

The plaintiff and appellant to pay the cost in both courts.