EQUITABLE CREDIT CO. v. MILLER

---

(May 7, 1928.  Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Conflict of Laws— Par. 1, 4;—Sales—Par. 324, 333.**
Under conditional sale of an automobile made in Florida, purchaser, who had no title when he brought the car into Louisiana, could convey none.

2. **Louisiana Digest—Conflict of Laws— Par. 1, 4.**
The sale having been made in Florida the laws of that state must control.

Appeal from Division "E," Civil District Court.  Wm. H. Brynes, Judge.

Action by Equitable Credit Co., Inc., against Herbert A. Miller.

There was judgment for plaintiff and de-defendant appealed.

Judgment affirmed.

Frances P. Burns, of New Orleans, attorney for plaintiff, appellee.

Hubert M. Ansley, of New Orleans, attorney for defendant, appellant.

JONES, J.   The sole question involved here is the ownership of a Ford coupe, which was obtained by a man named D. S. Overman, from a dealer, F. W. Birdsong, in West Palm Beach, Florida, under a conditional sale agreement of August 11, 1924, for a price of seven hundred seventy-seven and 75-100 ($777.75) dollars, of which one hundred ninety-four and 43-100 ($194.43) dollars was given in cash and the balance evidenced by a note.

Plaintiff formerly an automobile finance company of this city, which was then doing business in Florida, as assignee of the rights of the original owner, alleges that Overman illegally attempted to sell the car to defendant in violation of his agreement to keep the auto in Florida until the agreed price was paid in full.

The conditional sale agreement contains the stipulation that title shall remain in the seller until the purchase price is fully paid, that the seller may take possession of the car wherever found, if it should be moved from Florida in violation of above agreement and that the promissory note for balance due was accepted not as payment, but merely as evidence of amount still due.

Defense is two-fold—

(1)  That sale was complete and unconditional.

(2)  That defendant was purchaser in good faith, because Overman at the time he sold the car by notarial act to defendant on September 5th, 1924, had exhibited a certificate of title to the car issued and signed by the controller of the State of Florida.

Although the agreement shows on the face that the first defense has no merit, to make assurance doubly sure, we quote from the two latest decisions of the Supreme Court of Florida, which we have been referred to, as the law of the State where the contract was made must control:

"Where a contract embraced a promissory note and recited that it was given for the purchase price of described personal

property, to be paid for by installment, providing that default in payment of any installments shall cause all the installments to become due, and that title shall remain in the seller until the purchase price is paid, and to better secure the note conveying certain personalty to the payee, such conveyance to be void upon payment of the note. It was held a contract of conditional sale retaining title in the seller."

Mizell Live Stock Co. vs. McCaskell, 59 Fla. 322, 51 So. 547.

"Where a party executes a promissory note in payment for personal property sold to him, and expressly states therein that the title to, or ownership of such property shall remain in the vendor, until such note is paid, and the debtor not only fails to pay such note, but absconds, the vendor has a legal right to take possession of such property."

Bank of Jasper vs. Tuton, 62 Fla. 423, 57 So. 238.

See also same point in 84 So. 918.

As to the second defense, the muniments of title offered in evidence to show defendant's good faith were the following:

(1) Certificate issued by the controller of the State of Florida stating that satisfactory proof under Chapter 9157, Acts of 1923 had been made to show that the title to this Ford coupe was vested in D. S. Overman.

(2) Certified copy of Overman's application for this certificate.

(3) A metal tag, styled Florida motor vehicle title certificate plate No. 186,769.

In explanation of these so-called muniments, the following stipulation was made by counsel, subject to objection by defendant as to its binding force on defendant.

In order to save delay and expense in the taking of depositions for plaintiff, it was agreed between Francis P. Burns, attorney, representing plaintiff, and Hubert M. Ansley, attorney, representing defendant, that if the deposition of Hon. Ernest Amoss, Comptroller of the State of Florida, was taken, he would testify, substantially to the following facts:

"That he is the Comptroller of the State of Florida, with an office at Tallahassee, Florida; that he occupied such official position during the month of August, 1924. That among the duties performed by the said Comptroller is the registration of titles to automobiles, under the provisions of the Motor Vehicle Title Certificate Law, Chap. 9157, of the laws of the State of Florida, popularly known as the "Auto Theft Act." That such statute is printed and distributed in pamphlet form under the authority of the laws of Florida by the said Comptroller.

That under the construction put by the said Comptroller on said Auto Theft Act, all operators of automobiles in the State of Florida, whether they have purchased a car outright or on a conditional sale contract, wherein the vendor has retained title, must apply to the Comptroller for an official certificate of ownership, which official certificate of title must show on the purchaser's application the amount of lien, kind of lien and in whose favor. That such application for a certificate of title is to be made on oath by the applicant, on forms prepared by the Comptroller.

That an application for a certificate of title was made to the Comptroller by D. S. Overman, under oath, on August 12, 1924, which application showed that D. S. Overman then owed the sum of six hundred eighty-three ($683.00) dollars balance due on the purchase price of the car, under a lien contract dated August 11, 1924, in favor of F. W. Birdsong of Lake Worth, Florida.

That under the said Auto Theft Act the vendor, or assignee of the vendor of a conditional sale contract in which there has been a retention of title, is not required to notify the Comptroller of the retention of title.

That the object and purpose of Chapter 9157 is to enable persons whose cars have been stolen or lost, to trace them through the registry of certificates of titles, and that a special index of motor numbers on colored cards is kept by the Comptroller to facilitate this work.

That the Comptroller will issue to any person making application on oath, this certificate of title giving a description of the car and name of applicant, accompanied with a metal tag corresponding to the serial number of the certificate of title. That such certificate of title is prima facie proof that such person has sworn that he is owner of the car described therein, but that such certificate when issued by the Comptroller can be overturned by proper evidence, and a new certificate issued to the rightful owner.

Furthermore, defendant's uncertainty as to validity of Overman's title is persuasively shown by the fact that he gave a check on Friday, the day of the sale, which was not payable until the following Monday, although Overman insisted on immediate payment, as he wished to leave for Dallas early the next morning. Even then defendant would not go with Overman to cash check until he had consulted his attorney and had had Overman identified.

Miller further testified that when he first saw this mutilated "certificate of title" in the possession of Overman, he could discern thereon the motor number of the car and the name of the person from whom D. S. Overman had originally purchased it, yet between Friday, the day on which he purchased the car, and the following Monday, when the check was paid for the car, Mr. Miller signally failed to mention what efforts, if any, he made to inquire of F. W. Birdsong, if the car was fully paid for by Overman.

Knowing that Ford cars were stolen frequently and being uncertain as to Overman's title, defendant should have wired Birdsong for information as to encumbrances on car and then he would have been in a better position to claim the benefit of the rule, "where one of the two innocent parties must suffer through the act of a third person, the loss should fall upon the one whose negligence brought about the damage."

However, we decided this point adversely to defendant in a very recent case where the equities of the possessor of the car were far stronger than those of defendant.

See Powell Motor Car Co. vs. Christina Bros., No. 10,918 of the docket of this court, decided April 9, 1928, and not yet reported.

See also Hinton vs. Rouse, 4 La. App. 471.

Overland vs. Texarkana Co. vs. Bickley, 152 La. 622, 94 So. 138.

Harkness vs. Russell, 118 U. S. 663.

Segrist vs. Crabtree, 131 U. S. 287.

For above reasons the judgment is affirmed.