No. 3712

Second Circuit

AMERICAN SLICING MACHINE CO. v. ROTHSCHILD & LYONS ET AL.

(December 31, 1929. Opinion and Decree.)
(January 31, 1930. Rehearing Refused.)
(March 10, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Dale, Dale & Dale, of Vidalia, attorneys for plaintiff, appellee.

Calhoun & Calhoun, of Vidalia, attorneys for defendants, appellants.

REYNOLDS, J. Plaintiff sued defendants to be decreed owner of a certain slicing machine numbered 217427 and restored to the possession of it, and, in the alternative for $128.20, as its value, if restoration were not made.

It alleged that it had conditionally sold the machine to one Chrest Slavent, at the time a resident of the state of Louisiana, for the price of $200, and that he had paid $71.80 and still owed $128.20 of the amount; that the offer of purchase was made to it in the state of Illinois and accepted by it there, and the machine delivered to a carrier in the state of Indiana for transportation and delivery to Slavent in the state of Louisiana; and that the sale was upon condition that the title should not pass from it to the purchaser until the price was paid.

The contract is made part of the petition and reads as follows:

"Order
"Date 10—21—27.
"American Slicing Machine Co., 209 South State St., Chicago, Ill.—Gentlemen:
"Please. enter order for one American Slicing Machine, f. o. b. Indianapolis, Indiana.
"Price of Scout Machine without Pedestal $200.00.
"The machine hereby ordered is purchased subject to a discount of five per cent. if the amount is paid in cash within thirty days from date of shipment.
"The said machine shall be property of the American Slicing Machine Company until fully paid for by the undersigned.
"No verbal agreement can change or modify the conditions of this contract, and the undersigned states that there is no verbal or written understanding or agreement different from or other than the printed conditions of this contract. The undersigned also states that no machine nor any other article of trade or barter is to be received by the American Slicing Machine Company in payment or part payment of the purchase price of the American Slicing Machine therewith ordered.
"All payments must be made direct to the Chicago office.
"This machine is not purchased subject to trial.
"This order shall not be countermanded.
"Signed: Chrest Slavent
"Shipping { St. and No.
"Address: } City, Ferriday. State, La.
"If Direct Current, give voltage.
"If Alternating, give voltage 110.
"Cycles 60 Phase 1 2 wire 3 wire.
"Machine No._____ Pedestal No._____
"Salesman: Reginald Smith."

(All of the foregoing appears on the obverse of the sheet, and the following on the reverse:)

"Guaranty.

"The American Slicing Machine Company guarantees the machine or machines shipped by virtue of this order to be constructed of good material and free from defective workmanship. This guaranty holds for one year from date on which shipment is made, and if the machine is paid for in full within one year from date of shipment the guaranty is extended for another year.

"American Slicing Machine Co.,
"By W. B. Wollf, President.

"The American Slicing Machine Company also agrees, upon receiving written notice to that effect made by the party whose name is signed to the within order at the time the within order is given and not otherwise, that it will permit payment of the purchase price to be made in the following manner:

"$24.00 cash accompanying said notice and $16.00 to be paid during each and every succeeding month thereafter until paid for in full.

"The American Slicing Machine Company further agrees to accept a receipted freight bill covering freight only for the freight that has been paid by the party whose name is signed to the within order as such a part of the second payment as the amount of freight paid, provided that said second payment is forwarded within thirty days from date of shipment from the factory or other point from which delivery is made.

"A default in making payment of any monthly installment when due and payable shall cause all the unpaid remainder of the purchase price to become immediately due and payable, and the American Slicing Machine Company may, at its option, take possession of the machine or machines, and retain all money therefor received in part payment as its liquidated damages.

"The undersigned hereby gives notice of making payment, in accordance with the above terms.

"Signed: Chrest Slavent."

The defendants admitted the sale by plaintiff to Slavent of the machine for $200 and that $128.20 of the price was owing, but denied that the contract was entered into in the state of Illinois or the state of Indiana, and alleged that it was entered into in the state of Louisiana, and denied that the plaintiff was the owner or entitled to the possession of the machine.

Further, answering, they alleged that, as shown by the contract, the machine was to be shipped by plaintiff, from the state of Indiana, to Chrest Slavent, in the state of Louisiana, and that it did so ship it and he so accepted it, and that such shipment and acceptance constituted the transaction a Louisiana contract.

They further alleged that it was the intention of the plaintiff and of Chrest Slavent that the contract should be a Louisiana contract and be construed and controlled both as to its form and effect by the laws of the state of Louisiana.

And they further alleged that they purchased the machine in good faith and in ignorance of plaintiff's claim from the sheriff of the parish of Concordia at a sale thereof made by him as the property of Chrest Slavent under a seizure thereof upon a writ of fieri facias issued upon a judgment rendered by the district court of Concordia parish in suit No. 5015 styled Rothschild & Lyons vs. Chrest Slavent.

By agreement entered into between plaintiff and defendants it was admitted:

First. That both in the state of Illinois and the state of Indiana the sale of a chattel upon condition that the title shall not pass to the purchaser until the price has been fully paid is legal, and that if the contract between plaintiff and Chrest Slavent be either an Illinois or an

Indiana contract, he never acquired title to the machine.

Second. That the contract sued on was prepared and printed by the plaintiff and presented to Chrest Slavent in Ferriday, La., on October 21, 1927, for his signature, by Reginald Smith, at the time a salesman of plaintiff, and that Slavent then and there signed the contract, after inserting therein the words "Ferriday" and "La." and the figures "24.00" and "16.00" and paid to plaintiff's salesman $24 in cash, and that Smith then and there signed the contract himself. That Slavent had not previously seen the contract.

Third. That the machine was delivered to the carrier at Indianapolis, Ind., consigned to Chrest Slavent, at Ferriday, La., and was by the carrier delivered to him at the latter place upon his paying the transportation charges thereon.

Fourth. That defendants purchased the machine at sheriff's sale in good faith and in ignorance of plaintiff's claim.

On these issues the case was tried, and judgment was rendered decreeing plaintiff owner of the machine and entitled to the immediate possession thereof and ordering defendants to surrender it to plaintiff, and the defendants appealed.

OPINION

Contracts of conditional sale, or sale by which the vendee is to become at once unconditionally bound for the price, and the vendor is to continue to be the owner of the property sold until the price is paid, are not possible under the laws of the state of Louisiana (Barber Asphalt Co. vs. St. Louis Cypress Co., 121 La. 152, 46 So. 193), and where entered into here the effect is to vest title in the buyer immediately (Byrd vs. Cooper, 166 La. 402, 117 So. 441); but such contracts, when entered into in states allowing them, will be enforced by the courts of Louisiana, through comity, when not designed to circumvent our own laws (Overland Texarkana Co. vs. Bickley, 152 La. 622, 94 So. 138).

It is contended by plaintiff that no particular machine was agreed to be sold Slavent in the negotiations between him and its agent in Louisiana, but only a machine of a certain class of which it owned many, and that not until it had segregated one of these from the lot and delivered it to the carrier for transportation and delivery to Slavent was the contract completed, and that it was completed only when and where this act was done, and that it being admitted that it was done in Indianapolis, Ind., the contract was completed there; and that it being further admitted that under the laws of Indiana a contract of conditional sale is valid and also that Slavent had not fully paid for the machine, the title never passed from it to him. And plaintiff cites articles 1915, 1916, and 1917 of the Civil Code, and State vs. Shields, 110 La. 547, 34 So. 673, George D. Witt Shoe Co. vs. J. A. Seegars & Co., 122 La. 145, 47 So. 444, and Morotock Mfg. Co. vs. Britt & Norris, 1 La. App. 692, and other cases, in support of its contention.

Defendants contend that inasmuch as the machine was sold to be delivered to and used by the purchaser in this state and the remainder of the price was to be paid here, the whole beneficial operation and effect of the transaction was to take place in this state, and hence the sale was a Louisiana contract; or, if not, then that the transaction was merely a device to circumvent the effect of our laws in respect of contracts of conditional sale entered the method adopted by plaintiff to effect

into here, and that our courts will not lend their aid to the accomplishment of the purpose; and they cite the cases of Beggs vs. Bartels, 73 Conn. 132, 46 A. 874, 84 Am. St. Rep. 152, and David Bradley & Co. vs. Kingman Implement Co., 79 Neb. 144, 112 N.W. 346, 347, and others, as supporting their contention.

In Beggs vs. Bartels, a stationary engine and other machinery were seized in Connecticut under an execution against one Roberts, who had bought them in New York under a written contract of conditional sale executed in that state, from whence they were shipped into Connecticut.

It was conceded that by the laws of New York it was a valid conditional contract of sale, which did not divest the seller of title to the property, either as against the purchaser or his assigns or creditors.

Had it been executed in Connecticut, it would have been an absolute sale, except between the seller and buyer and their personal representatives, because not acknowledged according to the laws of that state.

In a contest between the seller and the execution creditor over the property it was contended by the former that the sale was a New York contract, under which the buyer never acquired title, and, dealing with this contention, the court said:

"Whether or not the defendants, who were Connecticut creditors of Roberts, obtained a title, by the levy of their execution, upon the property in Connecticut, depends entirely upon whether the validity of the contract of conditional sale is to be determined by the laws of this state or of the state of New York. From the facts that the contract was executed in New York, and the goods delivered to Roberts upon the cars in that state, it does not necessarily follow that the laws of New York govern upon the question of the validity and effect of the contract. The general rule that the lex loci contractus is applicable to the validity and construction of contracts assumes that the contract is to be performed where it is made, and the reason of the rule is that parties are ordinarily supposed to contract in view of the laws in force at the time and place of the making of their contracts. That general rule does not apply when it appears that the contract is to be performed or is to have its beneficial operation and effect elsewhere, or that it is made with reference to the laws of another place. Burnett vs. Railroad Co., 176 Pa. 45, 34 A. 972; Wharton Confl. Laws, sec. 401; Story, Confl. Laws, sec. 280. 'It is an established principle that' * * * contracts are to be construed according to the laws of the state in which they are made, unless it is perceived from their tenor that they are entered into with a view to the laws of some other state.' Smith v. Mead, 3 Conn. 253, (8 Am. Dec. 183); Greathead v. Walton, 40 Conn. 226-236. 'The general rule that the lex loci contractus shall govern * * * is theoretically, at least, founded upon the presumed intention that the parties contracted with reference to that law; and when the contract is to be performed elsewhere, or is to have its entire beneficial operation and effect elsewhere, then the law of the latter place is to govern, because, in the absence of anything to the contrary, it is presumed that the parties so intended.' Chillingworth v. Tinware Co., 66 Conn. 306-317, 33 A. 1009. * * *

"The purposes of the conditional contract of sale in the present case were these: To ultimately transfer, upon the payment of the purchase price as agreed, the title to the property in question from the plaintiffs to Roberts; to give to Roberts in the meantime, and while he performed his covenants, the use of the property; to secure the plaintiffs against loss, by enabling them to retake the property upon Roberts' failure to pay his notes and by preventing a sale of the property by Roberts to third parties, or a taking of it by attachment by his creditors. For

the accomplishment of these purposes, the parties intended that the property should be located in Connecticut.   *   *   *

"While the formal execution of the contract was in New York, the principal acts necessary to effect its objects were * * * to be performed in Connecticut. As affording to the plaintiffs a security upon the property described, and as transferring to Roberts the apparent ownership of the property by giving to him the possession, the right to use, * * * and as granting to him the absolute title upon payment of the purchase price, the contract was intended to have its operation upon property situated in Connecticut. * * * The transaction was begun in New York, but was to be performed and completed here, and the parties must be held to have contracted with reference to the law of this state, and that law must govern. * * *"

In David Bradley & Co. vs. Kingman Implement Co., the court, dealing with a contract of conditional sale, said:

"The contract between Meinen and the David Bradley Company was made in Council Bluffs, Iowa. No copy thereof was filed in the office of the clerk of Thayer county (Nebraska), where Meinen resided and carried on his business. It is insisted by appellant that the contract, being an Iowa contract, was not required to be filed in Thayer county in order to protect the David Bradley Company as against a purchaser or judgment creditor of Meinen; that a conditional sale of property made in Iowa, although to a resident of Nebraska, the property to be taken and used in Nebraska, does not come within the provisions of our statute requiring a conditional sale to be in writing and assigned by the vendee and a copy thereof filed with the clerk of the county. We do not think that this position can be sustained. While it is true that the contract of conditional sale was made in Iowa, both parties thereto contemplated that it was to be performed in Nebraska. The goods were to be taken to Nebraska and there sold, and absolute title passed to the purchasers from Meinen. Meinen was to remain in possession until a sale was made. * * *"

Plaintiff sent its salesman to Slavent in Louisiana, who there contracted with Slavent in plaintiff's name to sell him a certain kind of machine for a certain price, part of which was then and there paid to the salesman by Slavent and the remainder of which he was to pay in installments in the future; the machine to be shipped from out of the state to Slavent in Louisiana and there used by him and the remainder of the price sent from there.

We see no difference in principle between this case and that of Beggs vs. Bartels.

What effect contracts of conditional sale, entered into in states where they are valid, have when sought to be enforced in Louisiana, was considered in the cases of Overland Texarkana Co. vs. Bickley, 152 La. 622, 94 So. 138; Hinton vs. Rouse, 4 La. App. 471; Powell Motor Co. vs. Christina, 8 La. App. 174; Baldwin Piano Co. vs. Thompson, 8 La. App. 212; Equitable Credit Co. vs. Miller, 8 La. App. 254; Security Sales Co. vs. Blackwell, 9 La. App. 651, 120 So. 250.

In none of these cases, though, does it appear that the property conditionally sold was removed to Louisiana with the consent of the seller.

Nor does any of them go farther than to hold that the buyer cannot deprive the unpaid seller of his property by unauthorized removal of it to this state.

And though all of them do uphold the right of the unpaid seller to invoke the aid of the courts of this state to repossess himself of his property unauthorizedly brought into Louisiana, yet none of them involved his right to invoke such aid where, as here, he had himself shipped the property into Louisiana and the reser-

vation of the title thereto in himself manifestly was an effort to avoid the effect of the very laws whose protection he invoked.

The judgment appealed from is erroneous and must be reversed. It is therefore ordered, adjudged, and decreed that the judgment be annulled, avoided and reversed, and that plaintiff's demands be rejected and its suit dismissed at its cost.