FINANCE SECURITY CO., Inc., v. MEXIC.

No. 17090.

Court of Appeal of Louisiana. Orleans.
May 8, 1939.

Sieg. B. Christensen and Edw. J. Boyle, both of New Orleans, for appellant.

Borris Burk, of New Orleans, for appellee.

JANVIER, Judge.

Finance Security Company, Inc., a corporation domiciled in Bogalusa, Louisiana, claiming to be the owner of a Chevrolet automobile alleged to be in the possession of Mrs. Pearl Mexic, wife of Maurice Pailet, domiciled in the City of New Orleans, prayed for and obtained a writ of sequestration, under which writ the Civil Sheriff for the Parish of Orleans seized the said automobile, to be held pending the outcome of the suit in which plaintiff prayed to be recognized as owner.

Mrs. Pailet, after first testing the qualifications of the surety on the sequestration bond, unsuccessfully sought, on various technical grounds, to obtain the dissolution of the writ of sequestration. Failing in this, she filed answer, averring that she had purchased the automobile in good faith and for value and that her title thereto should be held paramount to the alleged title of plaintiff, and, assuming the position of plaintiff in reconvention, she alleged that, by the illegal seizure, she had been damaged in the sum of $1,020, and prayed for judgment against plaintiff for that amount and recognizing her as the owner of the automobile.

There was judgment in favor of Mrs. Pailet decreeing her to be the owner of the automobile and awarding her damages, as prayed for, in the sum of $1,020. Plaintiff has appealed.

The controversy concerning the ownership of the automobile results from the following facts:

Marion Motors, Inc., a corporation domiciled in Columbia, Mississippi, and engaged in the distribution of automobiles, on May 7, 1937, at its domicile, entered into a written agreement with A. G. Bardin under which, in consideration of $237.60 paid by him in cash and of his agreement to pay in installments a balance of $636.12, it delivered to him the Chevrolet automobile with which we are concerned. The contract stipulated for 18 monthly installments of $35.34 each, the first maturing on June 7, 1937, and further provided that Marion Motors, Inc., should retain title to the automobile until Bardin should have paid all of the installments. In connection with the said agreement, Bardin, in writing, made a statement giving his residence as No. 2312 Marengo Street, New Orleans, and his business address as No. 643 Magazine Street, also in New Orleans. He also stated, in writing, that he had lived all of his life in this City and that he was employed by the Interstate Electric Company, which is a well-known corporation located here. As soon as this agreement was executed, Marion Motors, Inc., sold and assigned to the present plaintiff, Finance Security Company, Inc., all of its right in and to the said agreement. Apparently, as soon as Bardin obtained possession of the Chevrolet automobile, he removed it to New Orleans and advertised it for sale in a local newspaper and, on May 20, 1937, just 13 days after he had purchased the car in Mississippi, he sold it to Mrs. Pailet in New Orleans.

It is admitted that, when she purchased the car, Mrs. Pailet was in good faith and that she did not know that Bardin had acquired it under a conditional sale agreement, nor that he had not paid the balance required by that agreement. It is also conceded that the said conditional sale agreement was not recorded in Louisiana.

Later, when Bardin failed to pay the installments which became due, the finance company, as obligees under the conditional sale agreement, communicated with him in New Orleans and, after considerable difficulty, obtained from him payment of two installments. Failing to secure further payments, the finance company finally decided to repossess the car in accordance with the right reserved in the sale agreement. In attempting to locate the car, it discovered it to be in the possession of Mrs. Pailet, who, as the finance company then learned, had bought it from Bardin as above set forth. Mrs. Pailet was advised of the claim of the finance company and demand was made on her for the surrender of the automobile. Through her attorney she advised the finance company of her purchase in good faith and that, when she made the purchase, she had found no recordation of any kind affecting the car on the public records in the State of Louisiana. She also remonstrated with the finance company concerning its threat to sequester the car and, through her attorney, advised the attorney of the finance company as follows:

"Should you sue out a writ of sequestration, my client will take a rule to dissolve same, in which case you will be cast for damages for the wrongful issuance of the writ of sequestration.

"My client has no intention of removing this car from the jurisdiction of this Court, and is taking good care of same and does not abuse same. And it is for the interest of your client in order to get a speedy decision of this Court, that your suit should not include a writ of attachment."

The finance company decided to bring the suit for possession but ignored her request that no sequestration be resorted to. Ten days after the car had been sequestered Mrs. Pailet obtained its release on bond and it has since been in her possession.

Had the automobile remained within the State of Mississippi, the finance company, as assignee of Marion Motors, Inc., would have been the legal owner of it since title did not pass to Bardin on delivery, but was retained by the Marion Motors, Inc., and was later assigned to the finance company. This is shown to be the law of Mississippi and it is also shown that in that state no recordation of such a contract is required. It is well established that, where such a conditional sale agreement is entered into in some state other than Louisiana, with a stipulation that the article involved is to remain in the other state, and the said article is later brought into Louisiana, the rights of the parties under that agreement will be recognized here, although that form of agreement in which the title is retained is unknown to and is, in fact, abhorrent to the laws of this State.

In American Slicing Machine Company v. Rothschild & Lyons et al., 12 La. App. 287, 125 So. 499, 500, our brothers

of the Second Circuit Court of Appeal clearly set forth the doctrine, which has been well established in this state: "Contracts of conditional sale, or sale by which the vendee is to become at once unconditionally bound for the price, and the vendor is to continue to be the owner of the property sold until the price is paid, are not possible under the laws of the state of Louisiana (Barber Asphalt Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193), and where entered into here the effect is to vest title in the buyer immediately (Byrd v. Cooper, 166 La. 402, 117 So. 441); but such contracts, when entered into in states allowing them, will be enforced by the courts of Louisiana, through comity, when not designed to circumvent our own laws (Overland Texarkana Co. v. Bickley, 152 La. 622, 94 So. 138)."

In Overland Texarkana Company v. Bickley, supra, cited in the Rothschild case, the Supreme Court had clearly established the rule as above set forth. It has also been recognized in the following cases: Hinton Company v. Rouse, 4 La.App. 471; Equitable Credit Company v. Miller, 8 La. App. 254; Security Sales Company, Inc. v. Blackwell, 9 La.App. 651, 120 So. 250; Finance Security Company v. Conway, 176 La. 456, 146 So. 22; State ex rel. Grosjean v. Shurley, La.App., 165 So. 533.

But counsel for Mrs. Pailet maintains that this principle is applicable only where the contract is made in the other state and it is contemplated that the article which is the subject of it is to remain in such other state; in other words, that the contract involved in this case would be recognized here if Bardin had been a resident of Mississippi and the contract had provided that the automobile would not be removed from that state. And it is pointed out that here, although plaintiff, in its petition, alleges that the contract provided "that the said automobile shall not be sold by the purchaser or taken out of the State of Mississippi without the written consent of the seller", the truth is that it did not so provide, and furthermore that both the Marion Motors, Inc., when it delivered the car, and the finance company, when it purchased the contract, were well aware of the fact that Bardin resided in Louisiana and intended to at once remove the car from Mississippi to this state. That this is true is evident from the testimony of Mr. Collins, who represented the motor company in the de-

livery of the car, and of Mr. Foil, who represented the finance company in the purchase of the contract. The testimony of Mr. Collins is as follows:

"Q. When you sold the car to Mr. Bardin, did Bardin ever tell you that he was a resident of the State of Mississippi? A. No sir.

"Q. What did he tell you? A. He told me that was his address—that address on the contract.

"Q. He told you that he lived in New Orleans? A. Yes.

"Q. Did he tell you that the car would be taken from Columbia, Mississippi, to New Orleans? A. Yes.

"Q. And you sold him the car in Columbia, for the purpose of having him take the car to New Orleans, Louisiana? A. Yes, that's right."

Mr. Foil shows that he had knowledge that the car was to be taken to Louisiana, for he testified as follows:

"Q. Was this car sold to a Louisiana man or a Mississippi man? A. Sold to a Louisiana man.

"Q. You had knowledge that it was a Louisiana man, hadn't you? A. Yes.

"Q. You had knowledge that the car would be located in the State of Louisiana? A. That's the information on the contract, yes sir."

As a matter of fact, the sale agreement provided not that the car would not be removed from Mississippi, but that it would not be removed "from the state in which the buyer now resides * * *".

When we remember that Mr. Bardin, in his written statement, had declared himself to be domiciled in Louisiana, it is clear that the document itself contemplated that the car would be taken to and kept in Louisiana.

■ While it is true that a conditional sale agreement will be recognized in this state if the parties thereto enter into it in some other state and under the laws of that state, and provided that it is contemplated and stipulated that the car will not be removed from that state, surely that result cannot be permitted where, though the contract is entered into in, and under the laws of, the other state, it is contemplated that the subject of the contract is to be removed to this state, for Art. 10 of our Civil Code provides that "* * * the effect of acts passed in one

country to have effect in another country, is regulated by the laws of the country where such acts are to have effect."

In Corpus Juris, Vol. 55, par. 1192, page 1208, appears the following: "According to the weight of authority, where a conditional sales contract is made in a state where the property is then situated, but it is contemplated by the contract that the property is to be used in another state —that is to say, that the contract is to be performed or to have its beneficial operation in the latter state, the laws of the latter state, and not of the state where the property was originally situated, govern in determining the validity and construction of that contract."

This rule is applicable whether the article is delivered in the state in which the contract is made or is to be delivered in the other state: " * * * where a conditional sale contract for chattels is made in the state where the property is situated, but by its terms it is contemplated that the property is to be removed to and used in another state, the contract is to be governed by the registration laws of the latter state, * * *. The rule has been applied both in cases where delivery was made by the seller to the buyer in the state in which the property was to be used and where delivery was made to the buyer in the state where the property was situated and the contract made and by him shipped into the state where it was contemplated by the contract that it was to be used." —55 Corpus Juris, Sec. 1274, p. 1264.

The rule is recognized by Mr. Blashfield in his Cyclopedia of Automobile Law and Practice (Permanent Edition), Vol. 7, page 225, Sec. 4578: " * * * If consent is given to the removal of the automobile into another jurisdiction, the reservation of title will be invalid as to creditors of the buyer and purchasers of the property in good faith in the latter jurisdiction * * *".

And Mr. Huddy, also an eminent authority on the law concerning automobiles, in his Cyclopedia of Automobile Law (9th Edition) Vol. 11-12, Sec. 69, sets forth his views on this question as follows: "If the contract of sale is made in one jurisdiction, and consent is given to the removal of the property contracted to be sold into another jurisdiction, the contract is invalid as to the creditors of the vendee and purchasers of the property in good faith of the latter jurisdiction, unless its

laws, relative to such contracts have been complied with; * * *".

In General Talking Pictures Corporation v. Pine Tree Amusement Company, Inc. et al., 180 La. 529, 156 So. 812, 813, the Supreme Court of Louisiana considered the effect to be given in this state to a so-called "lease agreement" under which certain movable property was to be delivered and used in Louisiana. The court held that, since the property was to remain in Louisiana, the contract, though it was termed a "lease", should be construed in accordance with the laws of this state: "The contract was to have effect in Louisiana and therefore must be construed under and governed by the laws of this state."

In American Slicing Machine Company v. Rothschild & Lyons, supra, as we have already shown, the Court of Appeal for the Second Circuit recognized the rule that, wherever a conditional sale agreement may have been executed, if the intention of the parties thereto was to have it take effect in Louisiana, such agreement is to be construed in accordance with the laws of Louisiana, which do not recognize such agreements, but treat them as conveying the title when the property is delivered.

We find ourselves thoroughly in accord with this thought. Our laws do not recognize conditional sales and they do require that, when property is sold, if a vendor's lien is to be retained or a mortgage is to be secured, effective against third persons, there must be recordation. If, therefore, the automobile in question had been sold, and, to secure payment of the balance of the purchase price, vendor's lien was intended to be retained, or a mortgage was intended to be secured, there must have been a recordation if the rights of any third person, who might purchase the car from the mortgagor, were to be adversely affected. Of this there can be no doubt. Why, then, should a so-called "conditional sale agreement", executed in another state but to take effect in Louisiana, be permitted, without recordation here, to have a greater effect than could be accorded to a vendor's lien or to a conventional mortgage authorized by the laws of Louisiana.

It was the act of the Marion Motors, Inc., in permitting the car to come into Louisiana—which act was acquiesced in by Finance Security Company, Inc.—that

made it possible for Bardin to bring the car into this state and to negotiate for its sale to Mrs. Pailet. Under those circumstances we cannot see that the holder of the conditional sale agreement should be entitled to claim that its title to the automobile is superior to that of the innocent third purchaser. In the Rothschild case, supra, the court, after discussing the various cases in which conditional sale agreements executed in other states have been held enforcible in Louisiana, said: "And though all of them do uphold the right of the unpaid seller to invoke the aid of the courts of this state to repossess himself of his property unauthorizedly brought into Louisiana, yet none of them involved his right to invoke such aid where, as here, he had himself shipped the property into Louisiana and the reservation of the title thereto in himself manifestly was an effort to avoid the effect of the very laws whose protection he invoked."

While it is true that the "seller" here did not ship the automobile into Louisiana, it did consent to its being brought here, and, therefore, we see no legal distinction based on this fact.

We conclude that the title to the automobile is in Mrs. Pailet and that, to that extent, the judgment rendered in her favor was correct.

◼ We next consider the question of the amount which should have been awarded to her as damages sustained by her. We note that her petition in reconvention does not pray for the allowance of an attorney's fee. It is obvious that she should not be allowed to recover any such fee for this reason and for the further reason that the writ of sequestration was not dissolved until the case was tried on the merits. Farriss v. Swift, 156 La. 12, 99 So. 893; Socola Rice Milling Company v. Gitz, 165 La. 984, 116 So. 407; Fabacher v. Rouprich, 160 La. 433, 107 So. 295; Smith v. Wm. D. Keith Motors Company, 163 La. 395, 111 So. 798; Louisiana State Rice Milling Company, Inc. v. Baker, 5 La.App. 751; Louisiana Farm Bureau Association v. Martin, 6 La.App. 736; Albert Hanson Lumber Company, Ltd. v. Mestayer, 130 La. 688, 58 So. 511; Kavanaugh v. Frost-Johnson Lumber Company, 149 La. 972, 90 So. 273; Three Rivers Oil Company v. Laurence, 153 La. 224, 95 So. 652; Witbeck v. Rea, 158 La. 1003, 105 So. 43.

Mrs. Pailet shows that she sustained but little damage. She states that she is in the real estate business and that she was embarrassed before her clients by the fact that the sheriff was required to wait in her office for several hours. But a review of her testimony on this point does not, we think, indicate that she sustained substantial damage. In fact, her own counsel, in his brief, refers to the actual damage sustained as "negligible". Her financial loss seems to have been limited to the expenditure of $20, which she gave to a relative for the use of an automobile for the ten days during which she was deprived of the use of her own car. While the evidence on this item of damage is not impressive, nevertheless we think that she has proved the expenditure of this amount.

◼ It is contended that, in view of the aggravated circumstances, punitive damages should be allowed. Counsel for Mrs. Pailet points to the fact that he warned the attorney for the finance company that there was no necessity to resort to sequestration and that that company nevertheless insisted on obtaining such writ. There seems to be authority for the awarding of punitive damages in cases where the action of the seizing creditor is arbitrary and where it might have been apparent, before a seizure was resorted to, that there was no necessity therefor. Van Wren v. Flynn, 34 La.Ann. 1158; Scott v. Moll, 45 La.Ann. 1401, 14 So. 301; Wall v. Hardwood Manufacturing Company, 127 La. 959, 54 So. 300; Perry v. Junius Hart Piano House, 10 Orleans App. 170; Washington v. Singer Sewing Machine Co., 10 Orleans App. 270; Epstein v. Roux, 12 Orleans App. 313; Durden v. Rosenberg et al., La.App., 148 So. 728.

On the other hand, we are impressed by the view that, where a party in good faith believes that he has title to or a lien upon a movable and is thus entitled to protect his interest by the sequestration thereof, he should not be prejudiced by his refusal to rely upon the promise of the possessor of the movable to retain it pending the outcome of the litigation. As the Supreme Court said in Broxton v. Bloom, 15 La.Ann. 618: "* * * A suit by sequestration is a lawful act, and, according to the general rule of law, the plaintiff would not be liable at all in damages for the exercise of this right,—but

is made liable in such a case, for any actual damage, * * * [occasioned by the sequestration]; this is an exception to the general rule."

At any rate, even though the proper rule may be that, where a writ of sequestration is dissolved after a trial on the merits of the controversy, punitive damages may be awarded where the facts show an arbitrary and unnecessary resort to the said writ, here we do not think that the facts justify the application of that rule.

In view of all the circumstances of the case—the fact that Mrs. Pailet was deprived of the use of her automobile, that she was humiliated and embarrassed to some extent,—we believe that a total allowance of $270 would be amply sufficient to compensate her.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is amended by the reduction of the amount awarded Mrs. Pearl Mexic, wife of Maurice Pailet, as plaintiff in reconvention, to the sum of $270, and that, in all other respects, the judgment appealed from be and it is affirmed, appellee to pay costs of appeal; appellant to pay all other costs.

Amended and affirmed.

McCALEB, J., takes no part.