151 So.2d 705 (1963)
UNIVERSAL C. I. T. CREDIT CORPORATION, Plaintiff-Appellant,
v.
Henry HULETT et ux., Defendants-Appellees.
No. 810.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1963.
*706 William C. Boone, Leesville, for plaintiff-appellant.
Wm. C. Pegues, III, DeRidder, for defendants-appellees.
Before TATE, FRUGÉ and HOOD, JJ.
TATE, Judge.
This is a suit to recover a deficiency due for the purchase price of an automobile. The automobile was repossessed by the creditor in Louisiana and then sold in Indiana at a nonjudicial sale.
The central issue is a conflict-of-law question. The issue is whether the plaintiff's right to a deficiency judgment is to be determined by reference to the law of Louisiana or to the law of Indiana.
The trial court sustained the defendants' motion for summary judgment, since it held that under the undisputed facts the plaintiff's rights are to be determined by reference to the law of Louisiana, under which a deficiency judgment is barred when the repossession sale is made without appraisement. The plaintiff appeals from the consequent dismissal of its suit.
The undisputed facts show:
The defendants purchased an Edsel automobile in 1959 from an Indiana firm. The conveyance was made by a conditional sale contract executed in Indiana, which was immediately assigned to an Indiana office of the plaintiff finance company.
On its face, however, this contract showed that the defendants-purchasers were at the time residents of Louisiana and that following the purchase the car was to be brought to and kept in Vernon Parish, Louisiana.
Some five months after the Indiana sale, the automobile was repossessed by the plaintiff's agent in Vernon Parish, Louisiana, *707 with the written consent of the defendant wife.
The vehicle was immediately returned to Indiana, where it was sold by the plaintiff at a nonjudicial public sale in accordance with the Indiana statutes. The sale was made without appraisement, which is not required by Indiana law as a prerequisite to the creditor's obtaining a deficiency judgment.
If Louisiana law is regarded as regulating the question, the creditor is not entitled to a deficiency judgment under the statutory law and public policy of this State, because the repossessed vehicle was sold without the debtors having been afforded the benefit of a prior appraisement, which ordinarily fixes a minimum selling price. See the Louisiana Deficiency Judgment Act, LSA-R.S. 13:4106, 4107. As stated in David Investment Co. v. Wright, La.App. 1 Cir., 89 So.2d 442, 444, "under the stringent public policy provisions of the Deficiency Judgment Act as interpreted, a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale, judicial or private, without the benefit of appraisement, * * *". See also Atlas Finance Corp. v. Whitehead, La.App. Orleans, 99 So.2d 481; Farmerville Bank v. Scheen, La.App. 2 Cir., 76 So.2d 581.
If, to the contrary, Indiana law is regarded as governing the question, the plaintiff creditor did comply with the Indiana prerequisites for a deficiency judgment. It gave prior written notice to the debtor of the repossession sale, and it also posted prior notice of the sale in three public places in the Indiana county of sale. Under Indiana statutory law, further, the creditor was entitled to hold the nonjudicial sale after repossession either at the place of the repossession (Vernon Parish, Louisiana) or at the place where the goods had originally been sole (Indiana).
In contending that the plaintiff company is entitled to a deficiency judgment because it had complied with all the necessary prerequisites of Indiana law therefor, able counsel for the plaintiff relies upon jurisprudence to the effect that the law of the state in which a contract is executed governs procedure in the performance of the provisions of the contract. Thus, argues counsel, this is an Indiana conditional sale of a motor vehicle located at the time in Indiana, which subsequent to its repossession was formally sold in Indiana by a public sale conducted in accordance with the laws of Indiana pursuant to which the plaintiff-creditor is entitled to a deficiency judgment.
On the other hand, as counsel for the appellees argues, this conditional sales contract may indeed have been executed in Indiana, but it shows on its face that the vehicle was sold to Louisiana residents in order to be brought into Louisiana, as a result of which the effects of the conditional sale and the subsequent repossession sale all must be regarded as governed by the law of Louisiana. "In Louisiana, the rule has been generally stated to be that the law of the place where the contract is to have effect determines the rights and obligations of the parties. See General Talking Pictures Corp. v. Pine Tree Amusement Co., 180 La. 529, 156 So. 812; American Slicing Machine Co. v. Rothschild et al., 12 La.App. 287, 125 So. 499, and Finance Security Co., Inc. v. Mexic, La.App., 188 So. 657". McKane v. New Amsterdam Casualty Co., La.App., Orleans, 199 So. 175, 182.
Thus, even though conditional sales and unrecorded chattel mortgages are not recognized in Louisiana, through comity the Louisiana courts will nevertheless enforce such transactions when validly confected in another state, even to the prejudice of innocent third persons who have dealt with the property in Louisianaproviding the property has been brought into Louisiana without the creditor's consent. If the chattel which was the object of the foreign conditional sale or chattel mortgage is brought into Louisiana with the consent or to the knowledge of the creditor, however, the Louisiana courts will then apply the Louisiana law and policy protecting third *708 persons who deal with the property in Louisiana (instead of enforcing the conflicting foreign-law rights of the creditor), on the theory that the creditor consented to or intended the application of Louisiana law to dealings with the movable brought to Louisiana with his consent or to his knowledge. See, e. g.: Fisher v. Bullington, 223 La. 368, 65 So.2d 880 and Finance Security Co. v. Mexic, La.App.Orleans, 188 So. 657 (conditional salesalso Restatement of Conflict of Laws, Sections 275 and 276); G. F. C. Corp. v. Rollins, 221 La. 166, 59 So.2d 108 and General Motors Acceptance Corp. v. Nuss, 195 La. 209, 196 So. 323 (chattel mortgagesalso Restatement, Sections 268, 269, 271).
The cited jurisprudence relates only to the effect of the extra-state transaction insofar as affecting the rights of innocent third parties dealing with the property after it has been brought into Louisiana.
Nevertheless, perhaps the rationale of these cases can be said to apply insofar as also determining under which state's law the rights of the parties to the contract themselves should be determined. Under the rationale of such jurisprudence, the present might then be regarded as a situation where the conditional sale of the automobile, as well as the right to repossess it and to obtain a deficiency judgment, all are regarded as regulated by the law of the place where the contract was intended to have effectnamely, Louisiana, where the purchased automobile was intended to be brought and thereafter to be maintained by the purchaser or to be repossessed by the seller in the event of default, and in which place the vehicle was actually repossessed. Likewise, the recovery of a deficiency judgment might be regarded as governed by the law of the situs of the mortgaged property, which is for many purposes regard as Louisiana, where the parties intended the chattel to be brought and maintained. See Leflar, Conflict of Laws (1959), Section 154.[1]
Such an approach indeed furnishes a logical method to resolve the conflict-of-law problem now before us.
We should point out, however, that the mechanical application of other conflict-of-law principles also apparently pertinent may with equal logic furnish a contrary answer.
For instance, the present conditional sale contract was executed in Indiana. Although the sale by its terms shows that the vehicle conveyed was intended to be brought to Louisiana (where in all probability it would be repossessed in the event of default), the conditional vendor can argue that the contract was executed under Indiana law, which enters into and forms part of the contract, and under which law the conditional vendor had the right to hold the repossession sale in the place where the contract was executed, namely, Indiana (as well as in the place where the property was repossessed, Louisiana). The purchasers may thus have bought their vehicle subject to the right under Indiana law of the conditional vendor or his assignee to bring the repossessed vehicle back to Indiana and then to hold the repossession sale in accordance with the laws of Indiana, under which no appraisement prior to the sale is required and under which the *709 present creditor is entitled to a deficiency judgment.[2] (Further, by voluntarily surrendering the vehicle to the creditor, the debtors may arguably have consented to the return of the vehicle to Indiana and to the jurisdiction of the Indiana law pertaining to repossession sales.)
In summary, it may be argued that, as between the parties to the contract, the nature and extent of the creditor's interest insofar as obtaining a deficiency judgment should be determined by the law of Indiana, where the vehicle was situated at the time the contract was executed, where the contract was executed, and where the creditor's lien was created, under principles to this effect set forth in the Restatement of Conflict of Laws, Sections 258, 261, 262, 279, 281.
Further, even if we regard this contract as governed by the law of the "place where the contract was intended to have effect", it may occur to us that the contract contemplated several factual incidents intended to be effected in different places, including: (a) execution of the contract in Indiana; (b) removal of the car to Louisiana; (c) repossession of the car in the event of default, probably but not necessarily in Louisiana; and (d) in that event, repossession sale either in Louisiana or in Indiana.
We may, it is true, easily say that the contract was intended to have effect in Louisiana insofar as the removal of the car to Louisiana and its maintenance therein is concerned. But we may also with probably equal logic argue to opposite conclusions that the contract was intended to have effect, as to repossessions or repossession sales, in accordance with the law of either where the repossession took place (Louisiana) or where the repossession sale took place (Indiana)that is, either that Louisiana law was intended to be applied if the vehicle was repossessed in Louisiana (even though the repossession sale subsequently took place in Indiana), or else that the law of the place of the repossession sale (in this case, Indiana) was intended to be applied, even if the vehicle had initially been repossessed in another jurisdiction from which it had been brought with the consent of the creditor.
This perhaps points up that not necessarily relevant to decision of the question now before us are decided cases or principles indicating that the present is to be considered either an Indiana or a Louisiana contract for certain purposes with which we are not here concerned, or suggesting that either the law of Louisiana or the law of Indiana is to be applied to determine the validity of rights not here in question. See, e. g., various decisions discussed in Annotation, "Conflict of law as to conditional sale of chattels", 25 A.L.R. 1153, supplemented at 57 A.L.R. 535, 87 A.L.R. 1308, 148 A.L.R. 375, and 13 A.L.R.2d 1312. (If, however, we had to decide that the contract and all its incidents must be governed exclusively by the law of either Louisiana or Indiana, we think it is fair to say that the increasing preponderance of reported decisions is to the effect that the rights and duties of the parties to a conditional sale contract executed in one state are nevertheless regulated by the laws of another state if the chattel conveyed was at the time intended to be brought to and maintained in that second state. See Section II of Annotation at 25 A.L.R. 1153 and supplements thereto above-cited.)
Actually, however, we are concerned with an area of infrequent litigation, in which, as Dean Leflar recently remarked "The law is unsettled as to whether rights of foreclosure and redemption, the privilege of *710 a conditional seller to repossess the article sold, and the effect of such repossession upon his right to collect the balance of the purchase price, involve rights in the res itself, or contractual rights, or are possibly only matters of remedy, but there has been some tendency to treat them as involving rights in rem, created by the law of the situs at the inception of the transaction," Leflar, Conflict of Laws (1959), Section 151, p. 290.
The narrow question before us concerns what law in protection of the debtor's rights is applicable when the chattel conveyed to him by a conditional sale executed in one state is repossessed from him in another state to which he has brought the chattel with the consent of the creditorthe conflict being between the law of the state where the repossession took place and the law of the state where the contract was executed.
In the few decisions relating to the question which we located in our non-exhaustive search of the jurisprudence, there is a split in authority. To oversimplify their holdings, some of these cases have held that the law of the place of repossession governs (Pioneer Credit Corp. v. Morency, 122 Vt. 463, 177 A.2d 368, 1962; Shanahan v. George B. Landers Construction Co., C.A.I, 266 F.2d 400, 1959; Stevenson v. Lima Locomotive Works, 180 Tenn. 137, 172 S.W.2d 812, 148 A.L.R. 370, 1943), others the law of the place of execution of the contract (Magoon v. Motors Acceptance Corp., 238 Wis. 1, 298 N.W. 191, 1941; Rubin v. Gallagher, 294 Mich. 124, 292 N.W. 584, 1940; Jewett, Inc. v. Keystone Driller Co., 282 Mass. 469, 185 N.E. 369, 87 A.L.R. 1298, 1933; Gross v. Jordan, 83 Me. 380, 22 A. 250, 1891; cf. also, Franklin Motor Car Co. v. Hamilton, 113 Me. 63, 92 A. 1001, 1915[3].)
As these well reasoned opposing lines of cases illustrate, no easy and certain answer to the question now before us may be obtained by the mechanical application of formal conflict-of-law principles. See, e. g., Cavers, The Conditional Seller's Remedies and the Choice of Law Process, 35 N.Y.U. L.Rev. 1126 (1960).
Further, although we have gone to some pains to ascertain how the courts of other states have decided somewhat similar questions, we actually see little reason to decide the matter as if we were bound by a nosecount of the conflicting decisions of other American jurisdictions or their holdings, however persuasive one or the other line of decisions may be.
To decide a case by the application of formal conflict-of-law principles is often not so much a matter of logic and the determination of the single correct answer by the logic-dictated application of such principles, as it is the selection by the court of the forum from among the competing intrastate and extra-state factors those which that court regards to be significant and which justify application of the particular conflict-of-law principle or principles which afford weight to the intra (or extra-) state factors found to be significant by the court of the forum. See: Cook, The Logical and Legal Bases of the Conflict of Laws (1942); Lorenzen, Selected Articles on the Conflict of Laws (1947); Ehrenzweig, The Lex ForiThe Basic Rule in the Conflict of Laws, 58 Mich.L.Rev. 637 (1960); Traynor, Is This Conflict Really Necessary?, 37 Tex.L.Rev. 657 (1959); Kramer, Interests and Policy Clashes in Conflict of Laws, 13 Rutgers, L.Rev. 523 (1959); Kelso, *711 The Process of Analyzing Choice-in-Law Problems, 1959 Wash. U.L.Q. 37; Currie, The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 Univ. of Chicago L.Rev. 9 (1958), and other articles by the same author there cited; Paulsen and Sovern, "Public Policy" in the Conflict of Laws, 56 Colum.L.Rev. 969 (1956); Chavers, The Critique of the Choice of Law Problem, 47 Harv.L.Rev. 173 (1933); Yntema, The Hornbook Method and the Conflict of Laws, 37 Yale L.J. 468 (1928).
As some of the cited sources note, in many instances the courts actually choose those formal conflict-of-law principles which justify the application of the law of the forum whenever there are sufficient factual contacts with the forum as to justify the application of its own law. It has in fact been suggested that an appropriate conflict-of-law approach is for the court of the forum frankly to apply its own law whenever through the factual elements of the case the forum state has any valid reason to apply its own law and policy, providing of course this does not violate constitutional full faith and credit requirements. See especially Currie, cited above. See also Bernkrant v. Fowler, 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961), an important recent decision frankly utilizing the approach of balancing the interests of the forum against those of the foreign jurisdiction as a guide to deciding choice-of-law problems.
With regard to the present instance, we are concerned with a suit brought in a Louisiana court against Louisiana residents. The suit is founded on the sale of a vehicle intended to be brought to and maintained within Louisiana, and which was repossessed in Louisiana. We see no reason why the Louisiana law relating to deficiency judgments should not be applied under these circumstances, even though the vehicle may have been sold in Indiana and even though the repossession sale took place in Indiana.
We reach this result whether we regard the significant factor as being that the vehicle was sold to Louisiana residents for use in Louisiana, that the repossession actually took place thereafter in Louisiana, that Louisiana has a valid governmental interest in enforcing its public policy barring deficiency judgments when chattels of Louisiana debtors are repossessed in Louisiana and subsequently sold without an appraisementor whether, as is actually the case, a combination of all these factors indicates that it is more appropriate for the Louisiana law to be applied by a Louisiana court in deciding this matter, than that of another forum which has less significant factual connections with the matter in litigation.
For the foregoing reasons, we think that the trial court correctly held that under the undisputed facts the defendants are entitled to a summary judgment dismissing the plaintiff's suit for a deficiency judgment, since the plaintiff is not entitled to same under Louisiana law. Accordingly, the trial court judgment is affirmed, at the cost of the plaintiff-appellant.
Affirmed.
NOTES
[1] A further facile rationale favoring affirmance of the trial court's judgment is supplied by the principle enunciated by Section 612, Restatement of Conflict of Laws: "No action can be maintained upon a cause of action created in another state, the enforcement of which is contrary to the strong public policy of the former". See Moore v. Burdine, La.App.Orleans, 174 So. 279; Citizens' Bank v. Hibernia Bank & Trust Co., 19 La.App. 461, 140 So. 705. It has been pointed out by scholars, however, that this rationale does not constitute a principle permitting of application by logic, so much as an indefinite and undeterminable cause to justify the application of the law of the forum when the too-rigid application of other formal conflict-of-law principles produces unsound results. Paulsen and Sovern, "Public Policy" in the Conflict of Laws, 56 Colum.L.Rev. 969 (1956); Ehrenzweig, The Law ForiThe Basic Rule in the Conflict of Laws, 58 Mich.L.Rev. 637, 671 (1960).
[2] To simplify the discussion, we will not discuss, beyond this reference to it, an additional problem suggested: Although Indiana may well permit a deficiency judgment where the vehicle is sold in Indiana and subsequently repossessed there, this is not necessarily determinative of the question of whether under Indiana law the creditor is entitled to a deficiency judgment where the vehicle was brought to Louisiana with the consent of the creditor, or where thereafter the act of repossession took place in Louisiana.
[3] Actually, the Jewett ease concerns a chattel only temporarily in the state of repossession and has been distinguished on that account, see Shanahan v. George B. Landers Construction Co., above-cited. The Rubin decision does not on its face involve a conflict between the law of the forum, where the chattel was repossessed, and the law of the other state in which the contract was executed; it merely recognizes a substantive right accruing to the conditional purchaser under the law of the latter state in the event the property was repossessed.